# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 22, 2015　　　Decided January 19, 2016

No. 14-5042

DOUGLAS B. HURON AND UNITED STATES SOCIETY FOR
AUGMENTATIVE AND ALTERNATIVE COMMUNICATION,
APPELLANTS

v.

BETH F. COBERT, IN HER OFFICIAL CAPACITY AS ACTING
DIRECTOR OF THE UNITED STATES OFFICE OF PERSONNEL
MANAGEMENT AND OFFICE OF PERSONNEL MANAGEMENT,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-00211)

———

*Eric S. Fleming*, Student Counsel, argued the cause for Appellants. On the briefs were *Tillman J. Breckenridge*, *Tara A. Brennan*, *Lewis A. Golinker*, and *Patricia E. Roberts*.

*Douglas Hallward-Driemeier*, *Joy J. Lui*, *James R. Myers*, *Emerson A. Siegle*, *Joshua E. Goldstein*, and *Gregory R. Nevins* were on the brief for *amicus curiae* Lambda Legal Defense and Education Fund, Inc., in support of Appellants. *Jennifer C. Pizer* entered an appearance.

*Peter C. Pfaffenroth*, Assistant U.S. Attorney, argued the cause for Appellees. On the brief were *Ronald C. Machen Jr.*, U.S. Attorney at the time the brief was filed, and *R. Craig Lawrence* and *Jeremy S. Simon*, Assistant U.S. Attorneys.

Before: HENDERSON, MILLETT, and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: Speech-generating devices assist individuals with severe communication impairments by "speaking" typed messages out loud. Appellants Douglas B. Huron and the United States Society for Augmentative and Alternative Communication (the "Society") filed this action against the Office of Personnel Management ("OPM") and its Director challenging the agency's approval of health benefits plans for federal employees that exclude or limit insurance coverage of speech-generating devices.

Because Huron and the Society forfeited twice over the claims on which they predicate standing, we affirm the district court's dismissal of the complaint for lack of jurisdiction.

# I

## Statutory Background

In 1959, Congress enacted the Federal Employee Health Benefits Act ("Act"), Pub. L. No. 86-382, 73 Stat. 708 (codified as amended at 5 U.S.C. §§ 8901–8914), to provide a subsidized health benefits program for federal employees. Under the Act, OPM is charged with administering the Federal Employee Health Benefits Program ("Federal Program") and "may contract for or approve" health benefits plans offered to federal employees by private insurance

carriers for renewable one-year terms. 5 U.S.C. §§ 8903–8903a.

Each health benefits plan contract must "contain a detailed statement of benefits offered and shall include such maximums, limitations, exclusions, and other definitions of benefits as [OPM] considers necessary or desirable." 5 U.S.C. § 8902(d). Plan rates must "reasonably and equitably reflect the cost of the benefits provided" and should be set in a manner "consistent with the lowest schedule of basic rates generally charged for new group health benefit plans issued to large employers." *Id.* § 8902(i). OPM may renegotiate rates each year "based on past experience and benefit adjustments," but any rate adjustments must be consistent with insurance industry practice. *Id.* During a four-week "open season" each year, employees may transfer plans or cancel their enrollment in the Federal Program. *Id.* § 8905(g); 5 C.F.R. § 890.301(f) (2013).

**Factual and Procedural History**

In reviewing the district court's dismissal of the complaint, we accept as true Huron's and the Society's well-pleaded factual allegations, and grant them the benefit of all inferences that can reasonably be drawn from those facts. *See, e.g., Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). The Society is "a membership organization dedicated to supporting the needs and desires of people who use augmentative and alternative communication." Appellants' Br. ii. Its members include individuals with severe communication impairments and their family members, speech-language pathologists, educators, and manufacturers of augmentative and alternative communication devices, including speech-generating devices. The Society aims to influence public policy by "advocating for the broadest scope

of coverage for speech-generating devices by all funding programs and sources." *Id.*

Huron, an attorney and resident of the District of Columbia, is a member of the Society. He relies on a speech-generating device known as a "DynaWrite" to communicate orally with his family, friends, colleagues, and clients. The DynaWrite resembles a small laptop, and when Huron types a phrase or sentence on its keyboard and presses a button, the device "speaks" aloud what he has entered.

After several years, Huron's DynaWrite stopped functioning, leaving him in need of a replacement device. Huron had obtained his original DynaWrite, which ordinarily costs approximately $5,000, through an insurance plan offered by a private sector employer. In 2009, Huron chose to switch to his wife's insurance policy, a Federal Program plan sponsored by the Government Employees Health Association ("GEHA"). Huron made that decision even though the GEHA plan expressly excluded speech-generating devices from coverage. Huron also receives benefits from Medicare, which will reimburse him for 80% of the cost of the new speech-generating device.

Although Huron's GEHA plan does not cover speech-generating devices, several other Federal Program plans do, to varying degrees. Since 2008, OPM has encouraged, but not required, plan sponsors to cover speech-generating devices as durable medical equipment in the plans offered to federal employees. More specifically, in its 2008 "call letter," OPM asked plan sponsors to indicate the extent to which they would offer such coverage going forward.[1] In its 2010 call

---

[1] OPM distributes an annual "call letter" to plan sponsors in which it solicits benefit and rate proposals for the coming year. The letters identify OPM's "key initiatives" and encourage, but do not

letter, OPM "again encourag[ed] plans to consider proposals for enhanced coverage for durable medical equipment, including * * * speech generating devices, * * * and to increase the dollar amounts for these benefits." J.A. 42.

In response, several nationwide and local plan sponsors in the Federal Program began covering speech-generating devices, though not always to the same extent as other durable medical equipment. Huron and the Society allege that, outside of the Federal Program, all other federal government-sponsored health benefits programs, including state Medicaid programs, Medicare, Tricare, and the Veteran's Administration, offer some coverage for speech-generating devices when medically necessary. They further allege that private-sector plans—including those from a majority of insurers that also participate in the Federal Program—routinely cover the devices to the same extent as other durable medical equipment.

In February 2013, Huron and the Society filed a one-count complaint against OPM and its Director in the United States District Court for the District of Columbia. They alleged that OPM had "not negotiated with [Federal Program] plan sponsors over [speech-generating device] coverage," Complaint 18, in violation of its obligations under the Act, and that those "acts and omissions regarding [speech-generating device] coverage," *id.* at 22, were arbitrary, capricious, an abuse of discretion and contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706.[2] The complaint requested declaratory and injunctive

require, providers to include in their proposals coverage for those identified items.

[2] Specifically, the complaint alleged that OPM and its Director failed to: (i) conduct a complete factual investigation of coverage

relief, including an order that OPM "direct all [Federal Program] sponsors to cover [speech-generating devices] to the same extent and scope as other covered [durable medical equipment], unless they produce a factual or actuarial justification to support lesser coverage[.]" Complaint 3.

OPM and its Director moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction, and under Rule 12(b)(6) for failure to state a claim. The district court dismissed the complaint for lack of jurisdiction. The court found that Huron had suffered an injury-in-fact when he was unable to obtain a replacement device through his GEHA plan. But the court held that Huron lacked standing because he failed to establish that his injury either (i) was caused by conduct attributable to OPM, since Huron could have selected another plan that would cover a new device, or (ii) was likely to be redressed, because a favorable ruling from the court would not result in GEHA covering his speech-generating device. The district court also concluded that, because the Society's associational standing is wholly dependent on Huron's, the Society lacked standing as well.

---

for speech-generating devices; (ii) negotiate with plan sponsors over coverage of speech-generating devices; (iii) require plan sponsors to justify exclusions and limitations pertaining to the coverage of speech-generating devices; (iv) ensure that federal employees have the same access to speech-generating devices as private-sector employees do; (v) ensure that federal employees receive the best coverage at the lowest cost; and (vi) ensure that plan coverage is consistent with changes in medical knowledge or standards of practice.

## II

## Analysis

We review the district court's dismissal of a case for lack of standing *de novo*. *See Information Handling Servs., Inc. v. Defense Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003). In evaluating standing at this early stage of the litigation, we assume that the complaint states a valid legal claim. *Id.*

To establish standing, Huron and the Society must demonstrate that (1) they suffered an "injury-in-fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992) (alterations, citations, and internal quotation marks omitted). Huron and the Society bear the burden of establishing each of those elements of standing. *Id.* Because the parties agree that the Society's claim to associational standing is entirely derivative of Huron's individual injury, *see Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 342–343 (1977), we focus on Huron's alleged standing.

Before the district court, Huron repeatedly alleged that his injury-in-fact was the financial harm he suffered because he was unable to obtain satisfactory coverage for a replacement speech-generating device through his Federal Program plan. *See* Plaintiffs' Mem. of Law in Opposition to Defendants' Motion to Dismiss the Complaint ("Pl. Opp."), *Huron v. Berry*, No. 1:13-cv-00211-ABJ (D.D.C. filed July 31, 2013), ECF No. 15, at 19 ("[Huron] therefore cannot

obtain a[] [speech-generating device] though his [Federal Program] plan," which caused him "injury in fact."); *id.* (purchasing a new device out-of-pocket "would have required Mr. Huron to incur monetary costs, which is obviously a form of injury-in-fact"); *id.* at 20 (borrowing a device "was the best available option for him to deal with an injury in fact he had *already* suffered—GEHA's non-coverage"); *id.* ("Thus, non-coverage of the [speech-generating device] has impacted Mr. Huron in a 'personal and individual way.'") (quoting *Defenders of Wildlife*, 504 U.S. at 560 n.1); *id.* at 22 ("OPM's approvals and determinations currently in force cause him monetary injury in fact * * *."). The district court therefore conducted its analysis of Huron's standing based upon that asserted injury-in-fact.[3]

On appeal, however, Huron has advanced an entirely different theory of injury and standing not previously presented, and has expressly abandoned any argument that he suffered a traditional financial injury-in-fact. *See* Oral Arg. Tr. 7–8 (Q: "You're not asserting non-procedural traditional Article III injury anymore?" A: "That's correct, Your Honor." * * * Q: "You've completely abandoned that as the theory for jurisdiction?" A: "I believe that we have. Yes, Your Honor."). Huron, indeed, makes no meaningful challenge to the district court's findings of both a lack of causation and redressability for the previously asserted financial injury.

Instead, Huron recasts his injury-in-fact as a *procedural* one caused by OPM's alleged failure to negotiate vigorously

---

[3] DynaVox Mayer-Johnson, the manufacturer of the DynaWrite, agreed to lend Huron a replacement speech-generating device pending the resolution of this case. Huron must return the device at the close of litigation.

enough to obtain his desired level of coverage for speech-generating devices by all Federal Program insurers.

A procedural injury occurs when a governmental action is undertaken without following a required procedure, and that procedure both is "designed to protect some threatened concrete interest" of the plaintiff and, if not followed, "will cause a distinct risk to a particularized interest of the plaintiff." *Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 2014) (en banc). Under Huron's new approach, he claims to have "suffered both procedural and particularized injuries when OPM approved his health benefits plan without abiding by the statutorily required procedure" that the agency negotiate for plans comparable to private sector plans with respect to their coverage of speech-generating devices. Appellants' Br. 25. That failure purportedly "tainted the plan selection process from the outset, and forced Huron to make a 'coerced choice' from a number of statutorily inadequate options." *Id.* at 31.

Huron's decision to roll out an entirely new argument for standing for the first time on appeal, coupled with his failure to challenge the district court's ruling that he lacked traditional injury-in-fact standing, dooms his case. "It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal." *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984); *see also Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule * * * that a federal appellate court does not consider an issue not passed upon below."). That rule applies to standing, as much as to merits, arguments, because it is not the province of an appellate court to "hypothesize or speculate about the existence of an injury [Plaintiff] did not assert" to the district court. *Kawa*

*Orthodontics, LLP v. Secretary, U.S. Dep't of the Treasury*, 773 F.3d 243, 246 (11th Cir. 2014).[4]

Any arguments Huron or the Society might have made for "traditional" standing, and might have made in response to the causation and redressability failings identified by the district court, are entirely missing from their briefs and were expressly abandoned at oral argument. Accordingly, that claim to standing is likewise forfeited. Oral Arg. Tr. 7–8; *see also Williams v. Romarm, SA*, 756 F.3d 777, 782–783 (D.C. Cir. 2014) (questions not presented and argued in briefs are forfeited).

To be sure, this court has the discretion, in "exceptional circumstances, where injustice might otherwise result," to "consider questions of law that were neither raised below nor passed upon by the District Court." *Air Florida, Inc.*, 750 F.2d at 1085. But Huron makes no argument that this case presents such an exceptional circumstance, and we find no reason to conclude that it does either.

Huron and the Society do not deny those rules of procedure exist. Instead, they insist that they have

---

[4] *See also, e.g.*, *Pluet v. Frasier*, 355 F.3d 381, 384–385 & n.2 (5th Cir. 2004) (refusing to "disturb the district court's judgment" based on plaintiff's new standing argument because it was "an entirely new legal theory raised for the first time on appeal and is accordingly waived"); *In re Hen House Interstate, Inc.*, 177 F.3d 719, 724 (7th Cir. 1999) (declining to consider alternative statutory basis for standing raised for the first time on appeal); *Common Cause of Pennsylvania v. Pennsylvania¸* 558 F.3d 249, 263 (3d Cir. 2009) ("A litigant generally cannot create standing through new allegations asserted on appeal."). *Cf. Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 109–110 (2001) (declining to consider plaintiff's belated arguments and evidence regarding standing that had "never been presented to any lower court").

"consistently" argued procedural standing, Appellants' Br. 39, and that the district court simply "disregarded [Huron's] procedural injury," *id.* at 13; *see also id.* at 25 ("The district court, however, failed to recognize that Huron also suffered a procedural injury."); *id.* at 37 ("The district court did not examine redressability under the lens of a procedural standing analysis, so its justifications for dismissing Huron's Complaint for lack of redressability are misplaced.").

That argument is inaccurate and unfair to the district court. Huron and the Society never identified a procedural injury or raised procedural standing before the district court, and instead argued vigorously for "traditional" standing until their briefing on appeal. In fact, Huron and the Society explicitly disavowed any argument for procedural standing in their opposition to dismissal in district court, contending that allegations in the complaint of statutory shortcomings by the agency "simply summarize how OPM's substantive determinations may be explained in a procedural context and *are not intended as stand-alone remediable allegations of statutory violations.*" Pl. Opp. 13 n.9 (emphasis added).

## III

### Conclusion

Huron's and the Society's appellate about-face on the nature of Huron's claimed injury leaves them no viable basis on which to establish standing. We accordingly affirm the judgment of the district court.

*So ordered.*