RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0290p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

GLENNBOROUGH HOMEOWNERS ASSOCIATION,
                            *Plaintiff-Appellant*,

    *v.*

UNITED STATES POSTAL SERVICE,
                            *Defendant-Appellee*.

⎫
⎪
⎪
⎬  No. 21-1340
⎪
⎪
⎭

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Port Huron.
No. 3:20-cv-12526—Robert H. Cleland, District Judge.

Decided and Filed:  December 22, 2021

Before:  BOGGS, WHITE, and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Thomas P. Bruetsch, SCHENK & BRUETSCH, Detroit, Michigan, for Appellant. James J. Carty, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

READLER, J., delivered the opinion of the court in which BOGGS, J., joined.  WHITE, J. (pp. 11–15), delivered a separate opinion concurring only in the judgment.

─────────────────

## OPINION

─────────────────

CHAD A. READLER, Circuit Judge.  Who among us has not been disappointed with the Postal Service when our mail was not delivered?  But leave it to the good people of Glennborough, a neighborhood located in Washtenaw County, Michigan to bring a federal lawsuit challenging the *successful* delivery of their mail.

By way of background, for more than two decades, Glennborough's developers and homeowners have sought to change the subdivision's Zone Improvement Plan Code, better known as a "ZIP Code." This effort included various pleas to the United States Postal Service, two rounds of litigation, and one settlement. In today's installment of this long-running endeavor, the Glennborough Homeowners Association contends that the Postal Service breached a consent judgment entered as part of the earlier settlement by allowing mail addressed to "Ypsilanti" (rather than "Superior Township" or "Ann Arbor," two other communities in Washtenaw County) to be delivered to Glennborough. The relief the Association seeks is to alter Glennborough's ZIP Code. But the consent judgment did not address that issue. Because the Association's complaint fails to allege why it has standing to pursue a claim for that manner of relief, we affirm the district court's dismissal of the complaint.

**I.**

No matter where one lives in our country, be it at a Big House or otherwise, or whether one favors living in the East or champions the West—there is symmetry in our respective postal addresses. In Washtenaw County (as elsewhere in the United States), a postal address typically consists of three lines: (1) the recipient's name (e.g., Victor S. Valiant); (2) the recipient's street address (e.g., 1201 South Main Street); and (3) the name of the recipient's municipality, state, and ZIP Code (e.g., Ann Arbor, Michigan 48104). Translated into official Postal Service nomenclature, a standardized postal address consists of the (1) recipient line, (2) delivery address line, and (3) last line. *See* USPS, *2 Postal Addressing Standards*, https://pe.usps.com/text/pub28/28c2_001.htm (last visited Dec. 21, 2021). The latter provision—the last line—is at the heart of this appeal.

In 1997, Glennborough's builders, apparently dissatisfied that the development was located within an Ypsilanti ZIP Code (48198), sought a federal court order requiring the Postal Service to recognize a ZIP Code for neighboring Ann Arbor (48105) in the last line of the development's postal addresses. Two years later, the parties agreed to a "compromise settlement" enshrined in a consent order. The consent order did not change Glennborough's ZIP Code. Instead, the Postal Service agreed to "recognize 'Superior Township, Michigan 48198' as

an authorized last line" for Glennborough "in place of its current last line of address, 'Ypsilanti, Michigan 48198.'"

The settlement, however, would not be the last word over Glennborough's last line.  In 2015, the Association again asked the Postal Service to change Glennborough's ZIP Code to 48105, a neighboring code in Ann Arbor.  The Postal Service declined. The Association made the same request the next year.  That request, however, fared no better.  And it came with the admonition that the Postal Service would not consider more than one request per decade to amend a ZIP Code boundary.

Following a seemingly fruitless effort to obtain agency records from the Postal Service, the Association sued the agency, asserting three claims:  one statutory (alleging violations of the Freedom of Information Act (FOIA)), one constitutional (alleging violations of the First Amendment), and one contractual (alleging breach of the 1999 consent judgment).  In addition to relief associated with its FOIA request, the Association sought an order requiring a change in the neighborhood ZIP Code from "48198" (Ypsilanti) to "48105" (Ann Arbor) as well as a declaratory judgment allowing the Association to continue to petition the Postal Service for a ZIP Code change.  The Postal Service moved to dismiss the complaint for want of subject-matter jurisdiction and failure to state a claim.  The district court granted the motion in full, and a timely appeal followed.  In its appeal, the Association has abandoned its FOIA and First Amendment claims, leaving only its claims regarding the 1999 consent judgment.

## II.

As we take up the Association's appeal, it bears emphasizing that its breach-of-the-consent-judgment claim does not assert that mail has been mishandled or delayed, or has not been delivered to Glennborough residents.  Instead, the Association takes issue with the wording on envelopes successfully delivered to those homeowners.  As the successor-in-interest to the developers who signed the consent order, the Association asserts that the Postal Service breached the order by allowing "Ypsilanti"—as opposed to "Superior Township" or even "Ann Arbor"—in the last line for mail delivery to Glennborough.

Before considering the merits of the Association's argument, however, we must "check both our own jurisdiction and the district court's." *Taylor v. Owens*, 990 F.3d 493, 496 (6th Cir. 2021). Article III of the Constitution confines federal-court jurisdiction to "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. To give "meaning to these constitutional limits," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014), we require that a plaintiff allege (1) a concrete and particularized injury (2) fairly traceable to the defendant's unlawful conduct that is (3) likely to be redressed by the requested relief, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). A plaintiff must demonstrate standing for each claim she seeks to press and for each form of relief she seeks. *Id.* at 2208. At the pleading stage, that burden requires a "plaintiff[] to clearly allege facts that demonstrate each element of standing." *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 386 (6th Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)); *see also Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 363 (6th Cir. 2021) (requiring the plaintiff to "clearly assert in his complaint" the harm he suffered from an underlying legal violation). This standard aligns with the one governing motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), meaning the Association cannot rely on general or conclusory allegations in support of its standing, but instead must assert a plausible claim for why it has standing to pursue its remaining claim. *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 544 (6th Cir. 2021).

From the Association's pleadings, we fail to see how it has standing to pursue its breach-of-the-consent-judgment claim. Start with a potential procedural shortcoming: the Association may have forfeited in this Court any argument for why it has standing. In granting the Postal Service's motion to dismiss, the district court held that the Association failed to assert a viable claim on the merits and lacked an injury in fact necessary for standing. Yet in its opening brief on appeal, the Association addressed only the merits question, ignoring the standing issue. That omission typically constitutes a forfeiture. *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) ("Time, time, and time again, we have reminded litigants that we will treat an argument as forfeited when it was not raised in the opening brief." (citation and internal quotation marks omitted)); *Hanner v. City of Dearborn Heights*, 450 F. App'x 440, 444 (6th Cir. 2011) ("[W]here a district court grants a motion to dismiss on the basis of two, alternative holdings, an appellant who challenges only one of the holdings [forfeits] both issues on appeal."

(citing *White Oak Prop. Dev., LLC v. Washington Twp.*, 606 F.3d 842, 854 (6th Cir. 2010)). True, whether a party *lacks* "Article III standing is jurisdictional and not subject to waiver." *LPP Mortg., Ltd. v. Brinley*, 547 F.3d 643, 647 (6th Cir. 2008) (cleaned up). But a party can forfeit its argument for why it *has* standing to sue. *See California v. Texas*, 141 S. Ct. 2104, 2116 (2021); *see also id.* at 2122 (Thomas, J., concurring); *Idaho Conservation League v. U.S. Forest Serv.*, --- F. App'x ---, 2021 WL 3758320, at *3 (9th Cir. Aug. 25, 2021) (Bea, J., dissenting) ("[E]ven arguments for standing[] are generally forfeited . . . when presented this late in the proceedings."). And that is what arguably seems to have occurred here, where the Association failed to address in its opening brief the standing aspect of the district court's holding.

In the Association's defense, the district court's discussion on standing for the breach-of-consent-judgment claim was relatively sparse and imprecise; it amounted to one line specifically referencing the phrase "injury in fact" amidst a five-page discussion of whether the Association adequately alleged a breach of contract and associated damages under Michigan law. Under these circumstances, we can at least understand why the Association did not discuss the standing issue in its opening appellate brief. Absent a passing reference to an injury in fact, the district court's entire discussion about the breach-of-consent-order claim was on the merits, making forfeiture a somewhat bitter pill for the Association to swallow. *See, e.g., Roberts v. Coffee County*, 826 F. App'x 549, 555 n.4 (6th Cir. 2020) (concluding that a party does not forfeit an argument by failing to "specifically discuss" it in the opening brief when that party made other related arguments). Keep in mind that the rule requiring all issues be raised in an opening brief is a court-made rule, *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 748 (6th Cir. 2019), one whose underlying rationale is to avoid surprise and prevent "sandbagging of appellees," *see Bd. of Regents of Univ. of Wash. v. EPA*, 86 F.3d 1214, 1221 (D.C. Cir. 1996). And one could debate whether the logic behind the forfeiture rule fits the circumstances here. All things considered, resolution of the forfeiture issue is not clear cut. But we need not resolve the question, *see, e.g., United States v. Hendrickson*, 822 F.3d 812, 830 (6th Cir. 2016), for the complaint does not hint at, let alone "clearly assert," why the Association has standing to pursue its claim regarding the parties' consent order, *see Ward*, 9 F.4th at 363.

Starting with the first of the three elements of standing, it is debatable whether the Association has satisfied the injury prong. *See Spokeo,* 578 U.S. at 340 (describing Article III's requirement that the plaintiff's injury in fact be "concrete"—that is, "real, and not abstract" (internal quotation marks omitted)). The Association's complaint is silent as to what concrete injury resulted from the Postal Service's willingness to deliver mail addressed to "Ypsilanti" to Glennborough. If the alleged injury is the purported indignity of receiving a letter otherwise properly addressed save for an Ypsilanti notation, such a psychic injury falls well short of a concrete harm needed to establish Article III standing. *See Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 619–20 (2007) (Scalia, J., concurring) (recognizing that a plaintiff whose only injury is subjective mental angst "lacks a concrete and particularized injury" under Article III). Likewise, the Association has failed to clearly allege (and it is difficult to imagine) that receipt of letters properly addressed save for an Ypsilanti notation could result in concrete economic harm to neighborhood residents. In other words, any theory of recovery for a breach of the consent judgment tied to the use of "Ypsilanti" on the last line of mail delivered to Glennborough fails because there is no allegation of a cognizable harm in the Association's complaint.

That said, we note that a breach of a contract between two private parties, standing alone, may suffice as an injury for purposes of constitutional standing. In some circumstances, an intangible harm can amount to an Article III injury when the harm has a close relationship to one that has "traditionally been regarded as providing a basis for a lawsuit in English or American courts." *See Spokeo*, 578 U.S. at 341. And there is some indication that common law courts "entertained breach-of-contract claims even when 'no real loss be proved.'" *See Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 292 (6th Cir. 2018) (Thapar, J., concurring) (quoting *Clinton v. Mercer*, 7 N.C. (3 Mur.) 119, 120 (1819)); *see also Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 798 (2021) (discussing English common law recognizing that a breach of contract could create an injury justifying the award of nominal damages). But even then, Article III requirements typically "are not satisfied merely because a party . . . has couched [its] request for forms of relief historically associated with courts of law in terms that have a familiar ring . . . ." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). And perhaps because an "injury in law is not an injury in

fact," *TransUnion*, 141 S. Ct. at 2205, a plaintiff who sues to vindicate statutory rights "in the nature of a contract" but otherwise suffers no monetary loss, as the Supreme Court recently recognized, lacks Article III standing for want of a concrete stake in the lawsuit, *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1619–20 (2020); *but cf. Springer,* 900 F.3d at 287 (holding, pre-*Thole*, that a party who was denied the "benefit of his bargain" with another private party suffers a concrete injury even absent a pocketbook injury). More broadly, case law recognizing a breach of contract as an injury in fact may not carry over to agreements with the federal government, where separation-of-powers concerns that animate our modern standing doctrine are more directly at play. *See Spokeo*, 578 U.S. at 344 (Thomas, J., concurring) (maintaining that separation-of-powers concerns underlying Article III standing are "absent when a private plaintiff seeks to enforce only his personal rights against another private party"). We need not resolve these thorny questions today, however. For as just explained, the Association does not even hint in its complaint—let alone plausibly allege—that is has suffered an injury as it relates to the consent order. *See Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 546 (holding that a complaint that requires a court to speculate as to the injury suffered by the plaintiff should be dismissed for want of standing).

Declining to argue that a legal injury amounts to an injury in fact, the Association does note several injuries that it says result from Glennborough's placement in the 48198 ZIP Code. For instance, the Association correlates a ZIP Code with "socio-economic benefits," such as its effect on property values, implying that Glennborough's ZIP Code placement has consequences for its residents' pocketbooks. Compl. ¶¶ 9–10. It suggests that a ZIP Code can determine school eligibility and utility access. *Id*. And it laments Glennborough's distance from the nearest Ypsilanti post office serving the 48198 ZIP Code. *Id.* ¶ 16. These effects, says the Association, show that Glennborough's residents are suffering a concrete harm for purposes of Article III standing. Case law lends some support to that assertion. *See, e.g., TransUnion LLC*, 141 S. Ct. at 2204 (recognizing monetary injuries as injuries in fact); *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (acknowledging that leaving a city to escape from an allegedly unconstitutional ordinance amounts to an injury in fact); *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 188 (4th Cir. 2018) (accepting that transferring a child to a new school because of her old school's allegedly unlawful conduct can amount to an Article III injury);

*Neighborhood Action Coal. v. City of Canton*, 882 F.2d 1012, 1016–17 (6th Cir. 1989) (same for receiving inferior municipal services). But even assuming the Association has established an Article III injury from these ZIP Code-related injuries, it nonetheless fails the second step of the standing inquiry—traceability. To establish traceability, the Association must show a "causal connection between the injury and the conduct complained of." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Yet none of the Association's purported ZIP Code-inspired injuries were caused by the alleged breach of the consent judgment. The consent order, remember, at most restricted what municipality should be listed in the last line of mail delivered to Glennborough; it did not alter or affect Glennborough's ZIP Code.

For many of the same reasons, the Association also fails to satisfy the final standing prong, redressability. In a nutshell, the redressability requirement obliges a plaintiff fairly to allege that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *See Defs. of Wildlife*, 504 U.S. at 560 (citation and internal quotation marks omitted); *Allen v. Wright*, 468 U.S. 737, 751 (1984) ("A plaintiff must allege personal injury . . . likely to be redressed by the requested relief."). Read with a most generous eye, the district court perhaps viewed the Association's complaint as asking for an order prohibiting the Postal Service from recognizing Ypsilanti as an "acceptable municipal name" in the last line for Glennborough. *See Glennborough Homeowners Ass'n v. U.S. Postal Serv*., No. 20-12526, 2021 WL 858730, at *9 (E.D. Mich. Mar. 8, 2021) ("Presumably, the relief Plaintiff seeks would involve Defendant withholding mail addressed to Ypsilanti, the city of Plaintiff's zip code."). That was an especially charitable assessment when the Association failed to clearly make that request in its complaint, as was its burden. *See Ward*, 9 F.4th at 363; *see also Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 546. And even if the complaint did seek such an order, the Association's standing problem remains in that withholding mail addressed to Ypsilanti would do nothing to redress the only injuries cited in its complaint, which are tied to Glennborough's placement in the 48198 ZIP Code.

While Glennborough also seeks modification of its ZIP Code, a remedy that presumably would redress Glennborough's alleged ZIP Code-related injuries, that form of relief has nothing to do with remedying the alleged breach of the consent judgment. After all, even under the

plaintiffs' preferred reading of the consent judgment, *see Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015) (assuming the substantive merits of plaintiff's claim to be true to examine Article III standing), that agreement requires the Postal Service to "recognize" Superior Township or Ann Arbor, Michigan *48198* as the "authorized last line" for Glennborough in lieu of "Ypsilanti, Michigan 48198.'" Altering Glennborough's ZIP Code would do nothing to rectify the government's breach, as it would not be recognizing the agreed "authorized last line" for Glennborough mail. And "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). In any event, the Association failed to plausibly allege why changing the ZIP Code would prevent the Postal Service from continuing to deliver Ypsilanti-addressed mail to Glennborough. *See Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 544. Accordingly, the Association's claim also fails the redressability prong of our Article III standing inquiry.

\* \* \* \* \*

In agreeing with today's outcome, the concurring opinion nonetheless would prefer to resolve the matter on forfeiture (rather than standing) grounds. To do so, the concurring opinion embraces a rather muscular view of forfeiture, and a much more forgiving approach toward Article III standing. The Constitution, however, affords us such discretion only with respect to the former. *See Defs. of Wildlife*, 504 U.S. at 560–61; *Island Creek Coal Co.*, 937 F.3d at 748.

In evaluating the Association's standing, the concurring opinion assumes that the Association has suffered an injury in fact from the alleged breach of the consent judgment, an injury that purportedly would be redressed by an order prohibiting the Postal Service from recognizing Ypsilanti as an "acceptable municipal name" for Glennborough. But the Association did not request that relief in its complaint. Indeed, it failed three times over, proving unable to satisfy its burden as to any of the standing inquiry's three prongs. Case in point, the Association failed to plead any injuries tied to the consent order, the injuries it did plead could not be traced to that agreement, and it sought no redress in the complaint regarding the allegedly breached agreement. That reality should come as no surprise. After all, the Association's entire legal saga, up to and including its final brief in this Court, has focused on the harm resulting from Glennborough's ZIP Code assignment. Yet with that remedy divorced from the consent

judgment claim, allowing the Association to pursue it here would license the very type of "bootstrapping" technique Article III prohibits. *See Steel Co.*, 523 U.S. at 107.

Perhaps the Association could have litigated this case in the manner the concurring opinion suggests. But it did not. And it is not our role to "conjure up" a plaintiff's standing theory when its complaint has not done the same. *See Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1275 (10th Cir. 2011) (Gorsuch, J.) ("Where an appellant fails to lead, we have no duty to follow. It is the appellant's burden, not ours, to conjure up possible theories to invoke [a court's] legal authority . . . .").

## III.

Because the Association fell short in alleging standing to pursue its breach-of-the-consent-judgment claim, we affirm the judgment of the district court (and thus need not reach the merits of the parties' arguments on how to interpret the consent judgment).

---

**CONCURRING IN THE JUDGMENT**

---

HELENE N. WHITE, Circuit Judge, concurring in part.  I concur in the judgment only.

The district court provided two bases for dismissing the Association's breach-of-consent-judgment claim: (i) the Association failed to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and (ii) the Association did not allege an injury-in-fact as required for standing.  The Association's opening brief on appeal addressed the first basis for dismissal, but not the second.  *See* Appellant's Br. at 11–14.  Issues not raised in a party's opening appellate brief are forfeited.  *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 317 (6th Cir. 2021) (citing *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019)); *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) ("Time, time, and time again, we have reminded litigants that we will treat an argument as forfeited when it was not raised in the opening brief." (internal quotation marks omitted)).  And where a district court dismisses a plaintiff's claim on two independent grounds, the plaintiff must demonstrate on appeal that the district court erred in both respects.  *See White Oak Prop. Dev., LLC v. Washington Twp.*, 606 F.3d 842, 854 (6th Cir. 2010).  Because the Association forfeited its argument that it has standing to bring the breach-of-consent-judgment claim, there is no need to reach the merits of the standing issue, especially in a published opinion.

The majority's standing discussion is dicta.  The majority acknowledges that the Association "arguably seem[ed]" to forfeit the argument that it has standing, but the majority declines to "resolve the [forfeiture] question," preferring instead to decide this case on standing grounds.  *See* Majority Op. at 5.  But neither the Association nor the majority provides a compelling reason for excusing the forfeiture.  We may excuse a forfeiture if the challenge "affect[s] our jurisdiction" or if "exceptional circumstances" so warrant.  *See Island Creek Coal*, 910 F.3d at 256.  Regarding the jurisdiction excuse, the majority notes that an appellant can forfeit arguments supporting standing, Majority Op. at 5 (citing *California v. Texas*, 141 S. Ct. 2104, 2116 (2021)), and other courts have agreed, *see, e.g.*, *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 544–46 (10th Cir. 2016); *Huron v. Cobert*, 809 F.3d 1274, 1280

(D.C. Cir. 2016). Regarding the "exceptional-circumstances" excuse, the Association does not describe any circumstances, let alone "exceptional" ones, that excuse its forfeiture. *See generally* Appellant's Br.; Reply Br. The majority reasons that the district court's standing discussion was "relatively sparse and imprecise," Majority Op. at 5, but the brevity and purported "imprecision" of the district court's resolution of the standing issue do not constitute "exceptional circumstances" excusing the Association's forfeiture. Citing the rationales for the forfeiture rule—"to avoid surprise and prevent 'sandbagging of appellees'"—the majority suggests that "one could debate whether the logic behind the forfeiture rule fits the circumstances here." *Id.* (quoting *Bd. of Regents of Univ. of Wash. v. EPA*, 86 F.3d 1214, 1221 (D.C. Cir. 1996)). There is no reasonable basis, however, for concluding that the general justifications for the forfeiture rule do not apply in this case.[1] The inescapable reality is that the Association forfeited any challenge to the district court's dismissal for lack of standing, and nodding to that reality but proceeding to address the merits of the standing issue anyway does not make the majority's discussion of the merits precedential.

Additionally, it is not clear that the Association lacks standing. Regarding the injury-in-fact requirement, we have noted that when a plaintiff brings a private contract claim, whether the plaintiff suffered an injury under Article III "does not depend on [an] allegation of financial loss." *See Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 287 (6th Cir. 2018). And "[i]n determining whether an intangible harm constitutes injury in fact, . . . it is instructive to consider whether [the harm] has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–41 (2016). At least some common-law courts appear to have

---

[1]The majority cites *Roberts v. Coffee County*, 826 F. App'x 549 (6th Cir. 2020), for the proposition that "a party does not forfeit an argument by failing to 'specifically discuss' it in the opening brief when that party made other related arguments." Majority Op. at 5 (quoting *Roberts*, 826 F. App'x at 555 n.4). *Roberts* is distinguishable. In *Roberts*, the plaintiff, who brought a deliberate-indifference claim against prison officials under the Fourteenth Amendment, did not address in his opening appellate brief the magistrate judge's determination that the plaintiff suffered only de minimis injuries. *Roberts*, 826 F. App'x at 551, 555 n.4. In an unpublished opinion, we declined to conclude that the plaintiff forfeited the issue because the plaintiff's opening brief argued that the magistrate judge erroneously made credibility determinations, which was the basis of the plaintiff's disagreement with the magistrate judge's de-minimis-injury determination. *Id.* at 555 n.4. Here, in contrast, the Association's arguments in the breach-of-consent-judgment section of its opening brief are completely unrelated to the standing argument that the Association failed to raise. *See* Appellant's Br. at 9–14.

addressed the merits of breach-of-contract claims in the absence of losses or harms beyond the breach itself.  *See, e.g.*, *Wilcox v. Plummer's Ex'rs*, 4 Pet. 172, 182 (1830) ("When the attorney was chargeable with negligence or unskilfulness, his contract was violated, and the action might have been sustained immediately.  Perhaps, in that event, no more than nominal damages may be proved, and no more recovered . . . ."); *Springer*, 900 F.3d at 292 (Thapar, J., concurring) (citing *Clinton v. Mercer*, 7 N.C. (3 Mur.) 119, 120 (N.C. 1819); *Marzetti v. Williams* (1830) 109 Eng. Rep. 842, 845 (KB)); *Bush v. Canfield*, 2 Conn. 485, 487–88 (Conn. 1818); *see also* Restatement (First) of Contracts § 328 (Am. L. Inst. 1932) ("Where a right of action for breach exists, but no harm was caused by the breach, . . . judgment will be given for nominal damages, a small sum fixed without regard to the amount of harm."); *Spokeo*, 578 U.S. at 344 (Thomas, J., concurring) (explaining that "[i]n a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a *de facto* injury merely from having his personal, legal rights invaded").

The majority recognizes that a "breach of a contract between two private parties, standing alone, may suffice as an injury for purposes of constitutional standing," but suggests that "case law recognizing a breach of contract as an injury in fact may not carry over to agreements with the federal government, where separation-of-powers concerns that animate our modern standing doctrine are more directly at play."  Majority Op. at 6–7.  The majority relies on Justice Thomas' concurrence in *Spokeo*, which suggested that separation-of-powers concerns are "generally absent when a private plaintiff seeks to enforce only his personal rights against another private party."  578 U.S. at 344 (Thomas, J., concurring).  Justice Thomas' concurrence, however, focused less on the distinction between claims against private parties and claims against the government than on the distinction between claims of violations of private rights and claims of violations of public rights.  *See id.* at 344–48 (Thomas, J., concurring).  The concurrence states:

> The injury-in-fact requirement often stymies a private plaintiff's attempt to vindicate the infringement of *public* rights.  The Court has said time and time again that, when a plaintiff seeks to vindicate a public right, the plaintiff must allege that he has suffered a "concrete" injury particular to himself. . . .
>
> But the concrete-harm requirement does not apply as rigorously when a private plaintiff seeks to vindicate his own private rights.  Our contemporary decisions have not required a plaintiff to assert an actual injury beyond the violation of his personal legal rights to satisfy the "injury-in-fact" requirement.

*Id.* at 346–47 (Thomas, J., concurring) (citing *Carey v. Piphus*, 435 U.S. 247, 266 (1978)). The Association does not seek vindication of a public right; rather, the Association seeks vindication of its rights under an agreement solely between itself and the Postal Service. *See id.* at 344 (Thomas, J., concurring) ("Private rights have traditionally included . . . contract rights." (internal quotation marks omitted)). Thus, the majority does not establish that the Association failed to allege an injury-in-fact.

Nor does the majority establish that the Association failed to allege traceability. If the alleged breach of the consent judgment is an injury-in-fact, then the Association has satisfied the traceability requirement by connecting the Postal Service's conduct to the alleged breach. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (explaining that traceability requires "a causal connection between the injury and the conduct complained of").

As to redressability, although the Association's requested relief includes a change of its ZIP code (a remedy not related to the consent judgment), the majority acknowledges that the district court "perhaps viewed" the complaint as also "asking for an order prohibiting the Postal Service from recognizing Ypsilanti as an 'acceptable municipal name' in the last line for Glennborough." Majority Op. at 8. The breach-of-consent-judgment count in the complaint states, "[The Postal Service] has failed to honor the Consent Judgment by not offering Superior Township as a last line of address instead of Ypsilanti for Glennborough homeowners. Instead it offers both 'Superior Township' and 'Ypsilanti' as an acceptable municipal name associated with the 48198 zip code." R. 1, PID 9–10. Both the district court and the Postal Service read the complaint as requesting an order prohibiting the Postal Service from recognizing Ypsilanti as an "acceptable municipal name" for mail sent to Glennborough. *See* R. 10, PID 383 ("[The Postal Service] accurately describes the nature of this claim: '[The Association] complains that the Postal Service is delivering mail regardless of whether it's addressed to Ypsilanti 48198 or Superior Township 48198. And [the Association] wants the court to order the [Postal Service] to stop delivering the former and only deliver the latter. . . .' Presumably, the relief [the Association] seeks would involve [the Postal Service] withholding mail addressed to Ypsilanti, the city of [the Association's] zip code." (quoting R. 6, PID 66)). When assessing redressability, we assume that the plaintiff's requested relief will be granted. *See Linda R.S. v.*

*Richard D.*, 410 U.S. 614, 618 (1973) (concluding that the plaintiff failed to show that her injury would be redressed "if [she] were granted the requested relief"). Under the Association's interpretation of the consent judgment, an order prohibiting the Postal Service from recognizing Ypsilanti as an "acceptable municipal name" would seemingly redress the Postal Service's alleged breach.

It thus appears that the majority's standing discussion might not simply be dicta, but also incorrect dicta.

Because the Association forfeited the argument that it has standing, I concur in the affirmance.