RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0179p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

CYNTHIA HURST, individually and as Executor of the
Estate of Thomas Persell,

      *Plaintiff-Appellant*,

  v.

CALIBER HOME LOANS, INC.,

      *Defendant - Appellee.*

No. 21-3350

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Akron.
No. 5:19-cv-00315—John R. Adams, District Judge.

Argued:  March 16, 2022

Decided and Filed:  August 10, 2022

Before:  COLE, CLAY, and THAPAR, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Andrew J. Gerling, DOUCET GERLING, CO., L.P.A., Dublin, Ohio, for Appellant.
Robert C. Folland, BARNES & THORNBURG LLP, Columbus, Ohio, for Appellee.
**ON BRIEF:**  Andrew J. Gerling, DOUCET GERLING, CO., L.P.A., Dublin, Ohio, for
Appellant.  Robert C. Folland, BARNES & THORNBURG LLP, Columbus, Ohio, Kian J.
Hudson, BARNES & THORNBURG LLP, Indianapolis, Indiana, for Appellee.

─────────────────

## OPINION

─────────────────

COLE, Circuit Judge.  Cynthia Hurst sued Caliber Home Loans for procedural violations
related to her loan-modification application.  After both parties filed motions for summary

judgment, the district court granted summary judgment in favor of Caliber. Hurst appeals the district court's ruling as to her dual-tracking claim, her reasonable diligence claim, and her adequate notice claim. We conclude that the district court erred with respect to the reasonable diligence claim only, so we affirm in part and vacate in part the district court's decision.

## I.  BACKGROUND

### A.  Facts

Cynthia Hurst and her father obtained a mortgage with Caliber Home Loans to finance their house in Massillon, Ohio in 2017. When they fell on hard times, Hurst applied for a loan modification[1] in March 2018. Caliber sent Hurst a letter acknowledging receipt of her application and asking her to submit six categories of additional documents. Three days later, Hurst sent some but not all of the requested information, and Caliber sent another letter describing the outstanding documents. This back-and-forth continued for a few weeks, until Caliber notified Hurst that her loan-modification application was considered complete as of April 5, 2018. Caliber told Hurst that it would evaluate her eligibility within thirty days, it would not commence foreclosure during that period, and it may need additional documents for a second-stage review.

Caliber did indeed realize it needed more information from Hurst. Caliber sent another letter on May 1, 2018, asking for additional and corrected versions of documents within thirty days. Caliber received all documents to its satisfaction except for two. Caliber sent another letter to Hurst about these deficiencies.

Caliber and Hurst communicated several more times about the documents over the course of the thirty-day period, both via letter and phone. Although Hurst sent information in response to these communications on three separate occasions, ultimately, she did not meet all of Caliber's requirements by the deadline. On May 31, 2018, Caliber informed Hurst via letter that it could not finish reviewing her loan-modification application because it was incomplete.

---

[1]Both Caliber and the statutory framework refer to this application as a "loss mitigation request" or "loss mitigation application."

That same day, Caliber also sent Hurst a second letter, notifying her that its "records indicate that [it is] unable to process [the] loss mitigation request at this time as the document(s) indicated below have not been provided." (Gonzalez Aff. Ex., R. 29-2, PageID 1009–11.) The letter also informed Hurst that "collection efforts already initiated on [her] account may currently be underway, and it is urgent that [she] provide the missing documents as soon as possible so that [Caliber] may assist [her]." (*Id.* at 1010 (emphasis removed).) Hurst sent some of the outstanding documents on June 7, 2018, but her application remained incomplete. Caliber responded again via letter, detailing the documents needed to complete her application.

Caliber filed a foreclosure action against Hurst's home in state court on June 18, 2018. Hurst incurred $13,922 in costs and attorney fees while litigating the state foreclosure.

Meanwhile, as the state foreclosure proceedings were underway, Hurst continued working with Caliber to complete her application. By this time, Hurst's loan-modification application had become outdated, so Caliber told Hurst she would need to submit an updated one. Caliber and Hurst once again engaged in a back-and-forth of letters, with Caliber requesting additional documents, and Hurst sending some but not all. Caliber again denied the application as incomplete on August 31, 2018.

Over the course of the communications between Caliber and Hurst—some twenty-three letters and forty-seven phone calls—Caliber employees gave Hurst unhelpful, misleading, and conflicting guidance. For example, on one occasion, Caliber was aware of a problem with some of Hurst's forms but did not notify her of the deficiency until two days before the deadline. On another, Caliber relayed a specific set of missing documents, and when Hurst submitted them, Caliber told her there were "still required documents that remain outstanding" without further explanation. On other occasions, Caliber requested specific documents via letter but gave conflicting advice over the phone about the same documents.

Hurst continued to pursue her loan-modification application, even after federal litigation began. Caliber eventually approved her for a permanent loan modification. The foreclosure action was ultimately dismissed.

**B. Procedural History**

Hurst filed suit in federal court on February 11, 2019, alleging that Caliber violated the Real Estate Settlement Procedures Act (RESPA) of 1974 and its implementing regulation, Regulation X. Hurst alleged that Caliber violated eight regulatory provisions in handling her loan-modification application, three of which are relevant on appeal. First, she alleges that Caliber violated Regulation X's prohibition on "dual tracking," which prevents a servicer from initiating foreclosure while a complete or facially complete loan-modification application is pending. *See* 12 C.F.R. § 1024.41(f)(2). Second, Hurst contends that Caliber failed to exercise reasonable diligence in obtaining documents and information necessary to complete her loan-modification application. *See id.* § 1024.41(b)(1). And third, Hurst claims that Caliber failed to provide adequate notice of the information it needed to complete its review. *See id.* § 1024.41(b)(2). Both parties moved for summary judgment, and the district court granted summary judgment to Caliber. Hurst timely appealed.

After the parties submitted their briefs, we requested supplemental briefing on the issue of standing.

## II. ANALYSIS

**A. Standing**

Under Article III of the Constitution, plaintiffs must have standing to sue in federal court. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). To do so, a plaintiff must show: (1) a "concrete, particularized, and actual or imminent" injury in fact; (2) that the defendant likely caused the injury; and (3) that judicial relief would likely redress the injury. *Id.* The parties dispute whether Hurst's alleged injury can support her three claims.

Hurst argues the costs she incurred fighting the state foreclosure action give her a concrete, particularized injury. At first blush, this seems inconsistent with the limited role attorney fees play in Article III standing. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021). Ordinarily, attorney fees incurred in the dispute at issue cannot constitute a concrete injury because "this element of Article III standing would *always* be satisfied by *any* plaintiff

who incurs legal expenses." *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 363 (6th Cir. 2021) (emphasis added) (quoting *Duncan v. Liberty Mut. Ins. Co.*, 854 F. App'x 652, 670 (6th Cir. 2021)).  Otherwise, plaintiffs would be able to "manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013).

Here, however, Hurst incurred the fees she seeks to recover in a separate proceeding— i.e., the state foreclosure action—and not through the current RESPA litigation.  Fees from a separate proceeding, like these, do not raise typical standing concerns because the harm has already materialized, and the plaintiff cannot manufacture standing simply by filing a new lawsuit.  For these reasons, this case fits into the narrow exception left open by *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("The litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself." (cleaned up)).  Here, the costs in the foreclosure suit are separate and distinct from litigation costs in the RESPA litigation, and thus not a byproduct of it.  *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021).

Additionally, the origin of Hurst's fees also matters because costs a borrower incurs due to a servicer's RESPA violations are actual damages.  *Cf. Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 720–21 (6th Cir. 2013).  These costs include attorney fees a plaintiff pays to defend herself against a lawsuit resulting from the servicer's noncompliance with RESPA.  Hurst's foreclosure fees therefore constitute a concrete, particularized injury.

Moreover, Hurst's foreclosure fees satisfy the first standing prong for all three of Hurst's present claims.  Had Caliber given adequate notice or exercised reasonable diligence, Hurst alleges she would have completed her loan-modification application on time, and Caliber would not have foreclosed.  In other words, each of Hurst's three claims relates to the same series of communications between Caliber and Hurst and to the foreclosure fees she incurred defending against the state action.

According to Caliber, we should not consider whether Hurst's foreclosure fees establish a basis for standing for her reasonable-diligence and adequate-notice claims because she did not

raise this argument adequately in her supplemental brief.  It is true that a party can forfeit an affirmative argument for standing, *Glennborough Homeowners Assoc. v. U.S. Postal Serv.*, 21 F.4th 410, 414 (6th Cir. 2021), but the purpose of this court-made rule is to "avoid surprise and prevent 'sandbagging of appellees.'"  *Id.* at 415 (quoting *Bd. of Regents of Univ. of Wash. v. EPA*, 86 F.3d 1214, 1221 (D.C. Cir. 1996)).  Here, the parties raised standing after they submitted their briefs on the merits, and only because we requested supplemental briefing on this issue—so there is no surprise to prevent.  Furthermore, Hurst's complaint clearly asserts her foreclosure fees as a basis for her standing.  *Cf. id.*; *Ward*, 9 F.4th at 363.  For these reasons, we exercise our discretion to consider this argument supporting standing and conclude that Hurst has established an injury in fact.  *See Harris v. Klare*, 902 F.3d 630, 636 (6th Cir. 2018) ("[I]t is within the ambit of our discretion to entertain questions not raised below.").

Caliber caused Hurst to accrue fees in defending against the state foreclosure, and judicial relief can redress this injury, so Hurst has standing to bring her three claims.  Because Hurst has standing, we decline to address the other bases for standing the parties raised.

**B.  Summary Judgment**

We review a grant of summary judgment de novo and draw "all reasonable inferences in favor of the non-moving party."  *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012).  Summary judgment is warranted "only when the evidence, taken in the light most favorable to the nonmoving party, establishes that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.* (citing Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "A genuine [dispute] of material fact exists when there are 'disputes over facts that might affect the outcome of the suit under the governing law.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The district court must not "weigh the evidence [or] determine the truth of the matter but . . . determine whether there is a genuine [dispute] for trial."  *Anderson*, 477 U.S. at 249.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.*

i. *Dual-Tracking Claim*

Hurst first claims that Caliber was wrong to initiate foreclosure while her facially complete application was pending, contrary to the district's ruling on summary judgment. RESPA restricts this type of "dual-tracking" through its implementing regulation, Regulation X, by prohibiting servicers from foreclosing on a borrower whose application has been deemed facially complete. 12 C.F.R. § 1024.41(f)(2); *see also id.* § 1024.41(c)(2)(iv). If a servicer later realizes that it needs additional information on a facially complete application, it may not foreclose without providing a reasonable opportunity for the borrower to submit the additional information. *Id.* § 1024.41(c)(2)(iv). The foreclosure protections remain in place until the borrower fails to provide the requested information within a reasonable timeframe. *Id.* In this case, the district court found that Hurst was not protected by the dual-tracking prohibition when Caliber foreclosed on her home because she did not submit required additional information to Caliber by the articulated deadline and therefore was no longer protected by the dual-tracking prohibition.

Caliber determined that Hurst submitted a facially complete loan-modification application on April 5, 2018. Afterward, Caliber discovered it needed additional information to finish reviewing her application. Caliber sent Hurst a letter on May 1, 2018 to specify the additional required documents and provide a thirty-day deadline. This reasonable deadline complied with Regulation X requirements, and Hurst was protected against foreclosure only until the deadline expired on May 31, 2018. *Id.*

During the thirty-day period, Hurst responded to Caliber's request via three separate submissions, but she failed to send at least one of the requested documents by the deadline. Caliber notified Hurst via letter that her application was incomplete as of May 31, 2018. At this time, Hurst was no longer protected by the dual-tracking prohibition. *See id.; see also* 12 C.F.R. § 1024, Supp. I, cmt. 1024.41, ¶ 41(c)(2)(iv)[2]. Accordingly, Caliber did not violate Regulation X when it foreclosed on Hurst's property on June 18, 2018. We affirm the district court's ruling on this claim.

---

[2]The Consumer Financial Protection Bureau's Official Interpretation of Regulation X can be found at https://www.consumerfinance.gov/rules-policy/regulations/1024/interp-41/#41-c-2-iv-Interp.

*ii. Reasonable-Diligence Claim*

Next, Hurst contends that Caliber did not exercise reasonable diligence in obtaining documents and other information necessary to complete her loan-modification application. Hurst points to communications where Caliber employees provided conflicting reasons as to why a form was incomplete. Some employees even had trouble identifying a deficiency with the form.

Under Regulation X, servicers must "exercise reasonable diligence in obtaining documents and information" necessary to complete a loan-modification application. 12 C.F.R. § 10241.41(b)(1). The regulation does not define "reasonable diligence," but courts have found that "a servicer may fail to exercise reasonable diligence if it repeatedly requests documents it already possesses[.]" *Schoen v. Bank of Am., N.A.*, No. 2:17-CV-648, 2019 WL 590882, at *7 (S.D. Ohio Feb. 13, 2019) (quoting *Benner v. Wells Fargo Bank, N.A.*, No. 2:16-cv-00467, 2018 WL 1548683, at *11 (D. Me. Mar. 29, 2018)). The Consumer Financial Protection Bureau, which has authority to oversee RESPA and Regulation X, has also suggested that a servicer fails to exercise reasonable diligence if it does not "promptly request the additional information or a corrected version of a previously submitted document" after determining that such information is necessary. *Id.* (quoting 12 C.F.R. § 1024, Supp. 1, cmt. 1024.41, ¶ 41(b)(2)(i)(B)). While the typical "crux of a § 1024.41(b)(1) 'reasonable diligence' claim is that a [servicer] erroneously requested documents or information it already had or should not have otherwise requested," *Jackson v. Bank of Am., N.A.*, No. 16-CV-787, 2019 WL 7288508, at *4 (W.D.N.Y. Dec. 30, 2019), the servicer must also "act with reasonable diligence to collect information needed to complete the application." 12 C.F.R. § 1024, Supp. I, cmt. 1024.41, ¶ 41(b)(1)(4). If the servicer learns it needs additional information after its initial application review, the Bureau requires the servicer to "contact[] the applicant promptly to obtain such information[.]" *Id.* at ¶ 41(b)(1)(4)(i).

Hurst alleges that Caliber was not reasonably diligent in communicating about some of her required documentation. First, Hurst contends that Caliber provided misleading or conflicting information about the required 4506-T form, which is a request for a previous tax return transcript. Caliber notified Hurst in writing that her submitted 4506-T form was incomplete because it needed to be "signed and dated" on March 23, 2018. Accordingly, Hurst

submitted a signed and dated 4506-T form. Caliber then rejected the 4506-T form, again citing "signed and dated" as the reason for rejection. Caliber did not notify Hurst that her submission had not been "properly scanned," even though Caliber's internal records document this issue. Hurst eventually learned that the scanning was problematic, but not until after nearly three months of contradictory phone calls with Caliber staff.

Second, Hurst also alleges that Caliber staff was not reasonably diligent in communicating about required bank statement submissions. Caliber requested that Hurst submit updated bank statements and profit-and-loss statements via letter on May 31, 2018. But on June 6, 2018, Caliber staff contradicted this requirement, advising Hurst over the phone that she was *not* required to submit the additional bank statements. Yet Caliber later required Hurst to submit them.

The district court did not consider whether either of these interactions could establish Caliber's lack of reasonable diligence under regulation guidance. Instead, the district court focused only on whether Caliber requested complete documents already in its possession. This analysis is too narrow—both the regulation guidance and Hurst's arguments demanded that the district court explore Caliber's misleading and conflicting communications as a basis for Hurst's reasonable-diligence claim. For this reason, we vacate the district court's grant of summary judgment to Caliber on this claim and remand the case for further proceedings. *See Lyons v. Sec'y of U.S. Air Force*, No. 15-3011, 2016 WL 11782517, at *1 (6th Cir. July 15, 2016).

### iii. Adequate-Notice Claim

Finally, Hurst claims that Caliber did not communicate application deficiencies sufficiently to her, as Regulation X requires. Under the regulation, servicers who deem a loss mitigation application incomplete must notify the borrower in writing, "stat[ing] the additional documents and information the borrower must submit to make the loss mitigation application complete[.]" 12 C.F.R. § 1024.41(b)(2)(i)(B). Hurst argues that some of Caliber's letters do not comply with this requirement because they did not specify the issues with previously submitted documents in enough detail. The district court found that Caliber did not violate Regulation X's notice requirements because Caliber acknowledged receipt of Hurst's application and requested

specific additional information in writing. Further, the court found that Caliber's subsequent letters responded to Hurst's additional document submissions and therefore did not trigger the communication requirements of 12 C.F.R. § 1024.41(b)(2).

Each of the letters Hurst cites was sent in response to Hurst's submissions of additional documents in support of her loan-modification application—but none of these letters responded to the receipt of the original loan-modification application. The obligations of a servicer under 12 C.F.R. § 1024.41(b)(2)(i) only apply to the receipt of a "loss mitigation application"—i.e., Hurst's initial loan-modification application. Caliber satisfied this obligation through the letter it sent following its receipt of Hurst's loan-modification application. Regulation X requirements do not extend to a borrower's subsequent submission of additional documents. *See* 12 C.F.R. § 1024.41(b)(2)(i). Thus, the letters Caliber sent after its original notice could not violate § 1024.41(b)(2). We therefore affirm the district court's grant of summary judgment to Caliber on this claim.

## III. CONCLUSION

For the foregoing reasons, we affirm in part and vacate in part the district court's decision.