# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued December 8, 2016          Decided January 18, 2017

No. 15–5107

ARTHUR S. WEST,
APPELLANT

v.

LORETTA E. LYNCH, ATTORNEY GENERAL OF THE
UNITED STATES, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-00098)

———

*David M. Zionts*, appointed by the court, argued the cause as *amicus curiae* in support of the appellant. *Robert A. Long, Jr.*, was with him on the briefs.

*Arthur S. West*, pro se, filed the briefs for the appellant.

*Nicolas Y. Riley*, Attorney, United States Department of Justice, argued the cause for the federal appellees. *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *Mark B. Stern*, Attorney, were with him on the brief.

*Jeffrey T. Even*, Deputy Solicitor General, Office of the Attorney General for the State of Washington, argued the cause for appellees Inslee and Foster. *Robert W. Ferguson*, Attorney General, was with him on the brief.

Before: HENDERSON, TATEL and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The Constitution limits our "judicial Power" to "Cases" and "Controversies," U.S. CONST. art. III, § 2, cl. 1, and there is no justiciable case or controversy unless the plaintiff has standing, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). To stave off dismissal for lack of standing, the plaintiff must sufficiently allege a "concrete and particularized" injury that is "fairly traceable to the challenged action of the defendant" and "likely" to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations, brackets and ellipses omitted). Arthur West, the plaintiff here, does not meet this "irreducible constitutional minimum." *Id*. at 560.

West lives in the state of Washington, which since the late 1990s has permitted the use of marijuana for medical purposes. He holds a medical marijuana authorization and uses marijuana for an undisclosed medical reason. He opposes the legalization of recreational marijuana, however, which Washington approved in 2012 through a ballot initiative. In West's view, the initiative and subsequent amendments are bad for the state's environment and for medical marijuana users like him.

All of Washington's laws governing marijuana—medical and recreational—are in tension with the Controlled

Substances Act of 1970 (CSA), 21 U.S.C. §§ 801 *et seq.*, which makes it a federal crime to manufacture, distribute or possess with intent to distribute marijuana. In 2013, the United States Department of Justice (Department), through then-Deputy Attorney General James Cole, issued a guidance memorandum (Cole Memorandum) to federal prosecutors about enforcement of the CSA in cases involving marijuana. The memorandum, prompted by Washington's 2012 ballot initiative and a similar one in Colorado, advises federal prosecutors generally to rely on state authorities to address marijuana activity unless the state's regulatory system is insufficiently robust or the activity implicates a federal enforcement priority. West sued the Department, Deputy Attorney General Cole and other federal and state officials in district court, claiming in a pro se complaint that the Cole Memorandum unconstitutionally "commandeer[s]" state officials and institutions.[1] Pl.'s Am. Compl. (Compl.), Dkt. No. 14 at 1. He also claimed that all defendants violated the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321 *et seq.*, by failing to prepare an environmental impact statement before publication of the memorandum. He alleged that, taken together, Washington's laws and the memorandum subject him to injuries from the wider availability of recreational marijuana and new restrictions on medical marijuana. The relief he sought centered not on state law but on the memorandum: he asked that it be "void[ed]" and that all defendants "be compelled to comply with . . . NEPA" in connection with the "federal . . .

---

[1] West filed his complaint in the District of Columbia rather than the Western District of Washington, where he resides. He is barred from litigating in the latter district "absent leave of court" because he has filed "an unending string" of "vexatious" lawsuits there. State Defs.' Mot. to Dismiss, Dkt. No. 3, Ex. 1 at 4 (district court order); *see In re West*, 552 F. App'x 624, 625 (9th Cir. 2014) (unpublished memorandum) (affirming order).

response" to the state's legalization of recreational marijuana. Compl. 18-19.

The district court dismissed the complaint, concluding (*inter alia*) that West lacks standing. We agree. First, for his commandeering claim, West has not sufficiently alleged that setting aside the Cole Memorandum would redress his alleged injuries from the wider availability of recreational marijuana and new restrictions on medical marijuana. Second, for his NEPA claim, West has not sufficiently alleged that any adverse environmental effects of recreational marijuana on his own particularized interests are traceable to the memorandum. We therefore uphold the dismissal of his complaint.[2]

---

[2] The district court dismissed the complaint in two separate orders. It first ordered dismissal as to the state defendants for lack of personal jurisdiction. 60 F. Supp. 3d 190, 193-96 (D.D.C. 2014). It did not address West's standing and was not required to do so: personal jurisdiction and standing are both "essential element[s] of the jurisdiction of a district court," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (internal quotation and ellipses omitted); *see Steel Co.*, 523 U.S. at 102, and neither the Supreme Court nor our Court "dictate[s] a sequencing of jurisdictional issues[,]" *Ruhrgas AG*, 526 U.S. at 584; *see Anderson v. Carter*, 802 F.3d 4, 9-10 (D.C. Cir. 2015). Several months later, the court ordered dismissal as to the federal defendants on the ground that West lacks standing. 60 F. Supp. 3d 197, 200-03 (D.D.C. 2015). Because our analysis of standing applies equally to the state and federal defendants, we affirm the dismissal as to all defendants for West's lack of standing without considering personal jurisdiction. *See Parsi v. Daioleslam*, 778 F.3d 116, 126 (D.C. Cir. 2015) ("Ordinarily, a court of appeals can affirm a district court judgment on any basis supported by the record, even if different from the grounds the district court cited.").

5

## I. BACKGROUND

For our review, the facts are undisputed. We recite them primarily from West's complaint, accepting as true its well-pleaded factual allegations and drawing all reasonable inferences in West's favor. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). As necessary, we cull additional facts from other parts of the record. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (in deciding subject matter jurisdiction, court may "consider[] facts developed in the record beyond the complaint"). Before turning to the injuries alleged in the complaint, we summarize the regulatory backdrop against which they must be evaluated.

### A. WASHINGTON'S MARIJUANA LAWS AND THE COLE MEMORANDUM

Since 1970, the CSA has made it a crime to manufacture, distribute or possess with intent to distribute controlled substances, 21 U.S.C. § 841(a)(1), including marijuana, *id*. § 812(c) (Schedule I(c)(10)). In late 1998, notwithstanding the CSA, Washington legalized the medical use of marijuana. Act of Nov. 3, 1998, ch. 2, 1999 Wash. Sess. Laws 1.[3] Starting in 2011, a "qualifying patient" could join together with up to nine other qualifying patients to grow marijuana in a "collective garden" and transport the product for medical use. Act of Apr. 29, 2011, ch. 181, 2011 Wash. Sess. Laws 1345, 1355. A qualifying patient could possess up to 24 ounces of useable marijuana at a time. *Id*. at 1353.

---

[3] Washington's session laws are available at leg.wa.gov/codereviser/pages/session_laws.aspx. Its laws relating to marijuana are primarily codified at chapters 69.50, 69.51 and 69.51A of the Revised Code of Washington.

In November 2012, Washington voters approved Initiative 502 (I-502), which legalized the recreational use of marijuana. Act of Nov. 6, 2012, ch. 3, 2013 Wash. Sess. Laws 28. I-502 set up a licensing regime for marijuana producers, processors and retailers. *Id*. at 33-52. It also provided for a marijuana excise tax and subjected retail marijuana sales to ordinary sales tax. *Id*. at 52-53. With the exception of a broad prohibition on using marijuana or marijuana-infused products "in view of the general public," *id*. at 44, I-502 did not modify the regime governing medical marijuana that had existed since the late 1990s, including provisions permitting the possession of up to 24 ounces of medical marijuana and allowing for the creation of collective gardens. Instead I-502 provided that any user over the age of 21 can, without violating "any . . . provision of Washington state law," possess up to one ounce of useable marijuana. *Id*.; *see id*. at 42.

In early 2013, Washington Governor Jay Inslee met with a White House official to seek assurances that the federal government did not intend to "preempt[] . . . state implementation of I-502, or pursue enforcement of federal criminal laws" in Washington "for those acting legally under [state] law." Pl.'s Supplemental Decl. and Exs. (Decl.), Dkt. No. 16 at 81. To the same end, Governor Inslee wrote a letter to Eric Holder, then-Attorney General of the United States, summarizing the regulatory and law enforcement strategies the state planned to implement in the wake of I-502.

In a letter dated August 29, 2013, Attorney General Holder informed Governor Inslee—and Governor John Hickenlooper of Colorado, another state that had legalized the recreational use of marijuana—that "while the Department will not at this time seek to challenge your state's law, we will nevertheless continue to enforce the Controlled Substances Act in your state." Decl. 71. The Attorney General also enclosed the

Cole Memorandum, which was issued that same day to all United States Attorneys.

The Cole Memorandum updated marijuana-related CSA guidances earlier issued to federal prosecutors in 2009 and 2011.[4] The memorandum "applies to all federal enforcement activity . . . concerning marijuana in all states." Decl. 72. It is "solely . . . a guide to the exercise of investigative and prosecutorial discretion" and "does not alter in any way the Department's authority to enforce federal law . . . regardless of state law." *Id*. at 75. It advises federal prosecutors "to review marijuana cases on a case-by-case basis" in deciding how to deal with "marijuana-related activity." *Id*. at 74. It directs them to "weigh all available information and evidence," including whether the activity "is demonstrably in compliance with a strong and effective state regulatory system." *Id*. It declares that "enforcement of state law by state and local law enforcement and regulatory bodies should remain the primary means of addressing marijuana-related activity" unless the state's "regulatory structure" and "enforcement efforts" "are not sufficiently robust." *Id*. That arrangement is meant to enable federal prosecutors to focus on "enforcement priorities that are particularly important to the federal government[,]" including prevention of violence, organized crime, interstate distribution, distribution to minors and use on federal property. *Id*. at 72-73. Finally, the memorandum states that, if marijuana-related activity "interferes with any one or more of

---

[4] As relevant here, the earlier guidance advised federal prosecutors not to "focus federal resources in [their] States on individuals whose actions are in clear and unambiguous compliance with existing state laws providing for the medical use of marijuana." *United States v. Canori*, 737 F.3d 181, 183 (2d Cir. 2013) (quoting 2009 guidance) (alteration in original) (internal quotation marks omitted).

these priorities," federal prosecution may be warranted "regardless of state law." *Id*. at 73.

In the first few years after Washington voters approved I-502, medical marijuana and recreational marijuana were governed by two parallel strands of Washington law, neither of which mentioned the other. As noted earlier, a user of medical marijuana could grow it in a collective garden with other patients and could possess up to 24 ounces. 2011 Wash. Sess. Laws at 1353, 1355. A recreational user, by contrast, could possess only one ounce. 2013 Wash. Sess. Laws at 42, 44. In April 2015, the Washington legislature amended the two strands of law and partially pulled them together through enactment of the Cannabis Patient Protection Act (CPPA), ch. 70, 2015 Wash. Sess. Laws 287 (Apr. 24, 2015). The CPPA is "a comprehensive act that uses the regulations in place for the recreational market to provide regulation for the medical use of marijuana." *Id*. at 288. In some ways, the CPPA is more restrictive than earlier laws. It repealed the provision that permitted a medical user to possess up to 24 ounces of useable marijuana. *Id*. at 317. Now the ordinary medical user may not possess more than three ounces purchased at retail and eight additional ounces obtained from home-grown plants. *Id*. at 312, 317 (codified at WASH. REV. CODE §§ 69.51A.040(1)(a) and 69.51A.210(1) (2016)). The CPPA also repealed the system of collective gardens, *id*. at 336, replacing it with a system of "cooperative[s]" under which "[n]o more than four qualifying patients" may cooperatively grow marijuana for medical use, *id*. at 319 (codified as amended at WASH. REV. CODE § 69.51A.250(1) (2016)). Cooperatives are subject to registration requirements and other restrictions to which collective gardens were not. *Compare* WASH. REV. CODE § 69.51A.085 (repealed 2016) (collective gardens), *with id*. § 69.51A.250 (2016) (cooperatives). The

CPPA took effect in stages during 2015 and 2016. 2015 Wash. Sess. Laws at 336.

## B.  WEST'S COMPLAINT

In April 2014, after the Cole Memorandum was issued but before the CPPA was enacted, West filed his complaint in district court.[5]  His claims are difficult to discern but the crux is that, through the "policy" announced in the memorandum, the federal defendants "improperly commandeer[ed]" the state defendants and other "[s]tate officers and institutions" in violation of the Tenth Amendment and other provisions of the United States Constitution. Compl. 1-2 (citing *Printz v. United States*, 521 U.S. 898 (1997); *New York v. United States*, 505 U.S. 144 (1992)). West also claimed that all of the defendants violated NEPA by failing to prepare an environmental impact statement before undertaking the "major federal action" announced in the memorandum. *Id*. at 2, 17 (citing 40 C.F.R. § 1508.18) (capitalization altered). According to the complaint, the memorandum subjects West to injuries from the wider availability of recreational marijuana and by limiting his access to medical marijuana. We briefly summarize West's allegations about each type of injury.

*Wider availability of recreational marijuana.* West opposed I-502. He frequents a park in Olympia that is "suffering under the impacts of homelessness and casual recreational drug use." Compl. 4. Implementation of I-502, as "sanctioned" by the Cole Memorandum, "will" cause a surge in drug use, further "degrad[ing]" the park. *Id*. at 14. Moreover, because I-502 authorizes "an entirely new commercial market" in marijuana, it "will" eventually cause

---

[5]  The complaint amended an earlier version filed in January 2014. No party claims the earlier version affects our analysis.

more "crime, traffic, noise, air pollution, and cumulative impacts." *Id*.

*Limited access to medical marijuana.* West holds a medical marijuana authorization, uses marijuana for medical purposes and is an "independent consultant" in that field. Compl. 4, 13. The Cole Memorandum "will" have the "foreseeable and imminent effect[s]" of limiting his access to medical marijuana and making it more expensive for him, inasmuch as state legislators have referred to the memorandum in proposing legislation "sharply regulat[ing]" medical marijuana and subjecting it to new taxes. *Id*. at 12-13.[6]

In the complaint's prayer for relief, West asked the district court to declare the Cole Memorandum "void" and to "compel[]" all of the defendants "to comply with . . . NEPA" in connection with the "federal . . . response" to Washington's legalization of recreational marijuana. Compl. 18-19. The defendants moved to dismiss the complaint, contending (*inter alia*) that West lacks standing. West opposed their motions but did not explain how the relief he requested would redress his alleged injuries.

## C. THE DISTRICT COURT'S DISMISSAL OF THE COMPLAINT

The district court dismissed the complaint, concluding (*inter alia*) that "West has not established that he has Article III standing to bring any of his various claims to federal court." 60 F. Supp. 3d 197, 200 (D.D.C. 2015); *see supra* note 2. Reciting the three elements of standing—(1) a particularized injury to the plaintiff (2) traceable to the defendants'

---

[6] The proposed legislation cited in the complaint was not enacted but presaged the CPPA, which, as noted, was enacted after West filed his complaint.

challenged conduct and (3) redressable by a favorable decision—the court held that West did not sufficiently plead any of them. 60 F. Supp. 3d at 200-03. First, in the court's view, West's allegations that the Cole Memorandum "will" produce more crime, traffic and pollution and "will" limit his access to medical marijuana were inadequate "speculative predictions." *Id.* at 201 (internal quotations and emphases omitted). Second, the court reasoned that West's alleged injuries could not "fairly . . . be traced" to the memorandum, which was issued well after I-502 became law and which merely "allow[s]" the allegedly harmful actions of third parties not involved in the suit. *Id.* (internal quotation omitted). Third, the court held that because West "made no effort to show that his injuries can be redressed" in federal court, he "forfeited any arguments he might have had" on that issue. *Id.* at 202-03 & n.5. The court added that any claim of redressability would fail in any event because it was "purely speculative" that voiding the memorandum would "modify Washington's . . . allegedly harmful marijuana policies." *Id.* (internal quotation omitted).[7]

West appealed and this Court appointed amicus curiae to present arguments in support of his position. West adopts amicus's arguments without asserting any additional non-frivolous contention regarding his standing.

## II.  ANALYSIS

Because "standing is not dispensed in gross" but instead may differ claim by claim, *Davis v. FEC*, 554 U.S. 724, 734

---

[7] In a subsequent order denying reconsideration, the district court clarified that its standing analysis applied not only to West's commandeering claim but to his NEPA claim as well. 309 F.R.D. 54, 59 (D.D.C. 2015).

(2008) (internal quotation and alteration omitted), we address seriatim West's standing to pursue his commandeering and NEPA claims. Reviewing the district court's decision de novo, *Teton Historic Aviation Found. v. Dep't of Defense*, 785 F.3d 719, 724 (D.C. Cir. 2015) (per curiam), we conclude that West lacks standing to assert both claims.

## A. COMMANDEERING

For West's claim that the Cole Memorandum "commandeer[s]" state officials and otherwise violates the Constitution, Compl. 1, 17-18, we need not decide whether he has adequately pleaded any particularized injury traceable to the memorandum because he has not sufficiently alleged redressability.[8] *See Huron v. Cobert*, 809 F.3d 1274, 1279 (D.C. Cir. 2016) (plaintiff "bear[s] the burden of establishing each of [the] elements of standing"). "Redressability examines whether the relief sought, assuming that the court

---

[8] We observe, however, that West's and amicus's assertions of injury from new restrictions on medical marijuana are chronologically problematic. The CPPA is the primary source of those restrictions and it postdates West's complaint. Because "a party must show a legally cognizable injury to have standing to begin a lawsuit," *Garden State Broad. Ltd. P'ship v. FCC*, 996 F.2d 386, 394 (D.C. Cir. 1993), "[s]tanding is determined as of the time the action is brought," *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005) (citing cases). We therefore question the CPPA's relevance to West's standing. Amicus suggests remanding the case so that West can amend the complaint to account for the CPPA and other developments. There is no need. In view of our conclusion about redressability, amending the complaint would only delay the inevitable. *Cf. Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012) (per curiam) ("A district court may deny a motion to amend a complaint as futile if the proposed claim would not survive a motion to dismiss.").

chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663-64 (D.C. Cir. 1996) (en banc) (footnote omitted). The key word is "likely." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." (internal quotation omitted)). As relief on his commandeering claim, West asks that the Cole Memorandum be declared "void." Compl. 19. But his complaint and oppositions to the defendants' motions to dismiss did not even begin to explain how voiding the memorandum would likely clean up the park he visits; reduce crime, traffic and pollution more generally; or cause Washington to ease its restrictions on medical marijuana. Nor has amicus closed the gap in this Court.[9]

Amicus's argument in a nutshell is that redressability necessarily "follows from causation." Amicus Br. 40; *see id.* at 30-31. Not so. It is true that causation and redressability "are closely related" like "two sides of a . . . coin." *Dynalantic Corp. v. Dep't of Defense*, 115 F.3d 1012, 1017 (D.C. Cir. 1997). Like heads and tails, however, the two concepts are distinct: causation focuses on the "connection between the assertedly unlawful conduct and the alleged injury" whereas redressability focuses on the "connection between the alleged

---

[9] In saying so, we by no means denigrate amicus, who provided exemplary briefing and oral argument in service of an unwinnable cause. Indeed, even if amicus had fashioned a viable theory of redressability, it would not have aided West, who preserved no such theory in district court. 60 F. Supp. 3d 197, 202-03 & n.5 (D.D.C. 2015); *see Huron*, 809 F.3d at 1280 (absent "exceptional circumstances," plaintiff may not "roll out an entirely new argument for standing for the first time on appeal" (internal quotation omitted)).

injury and the judicial relief requested." *Allen v. Wright*, 468
U.S. 737, 753 n.19 (1984). If the challenged conduct is at best
an indirect or contributing cause of the plaintiff's injury—*i.e.*,
if the injury may or may not follow from the conduct, based on
a "chain of contingencies," *Clapper v. Amnesty Int'l USA*, 568
U.S. __, 133 S. Ct. 1138, 1148 (2013)—the plaintiff faces an
uphill climb in pleading and proving redressability. *Arpaio v.
Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) ("When considering
any chain of allegations for standing purposes, we may reject
as overly speculative those links which are predictions of
future events[,] especially future actions to be taken by third
parties . . . ." (internal quotation and parentheses omitted));
*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930,
938 (D.C. Cir. 2004) ("[A] plaintiff's standing fails where it is
purely speculative that a requested change in government
policy will alter the behavior of regulated third parties that are
the direct cause of the plaintiff's injuries.").

Our *National Wrestling Coaches* decision illustrates the
principle. In that case, organizations representing male
collegiate wrestlers and coaches challenged regulatory
guidance implementing Title IX of the Education Amendments
of 1972, 20 U.S.C. §§ 1681 *et seq.* The guidance prescribed a
three-part test for measuring compliance with an earlier
requirement that schools provide "equal athletic opportunity
for members of both sexes." 366 F.3d at 934-35 (quoting 34
C.F.R. § 106.41(c) and 45 C.F.R. § 86.41(c)). According to
the plaintiff organizations, some schools passed the test "not by
offering increased athletic opportunities to female students, but
by reducing the opportunities available to male students,"
including by eliminating men's varsity wrestling. *Id.* at 937.
We affirmed the district court's dismissal of the suit for lack of
standing because the plaintiffs could not establish
redressability. *Id.* at 936-45. Setting aside the challenged
guidance, we reasoned, would not undo the underlying

equal-opportunity requirement or prevent the schools from exercising their own "discretion to eliminate men's wrestling programs, as necessary, to comply with" the requirement. *Id.* at 933. And the plaintiffs "offer[ed] nothing but speculation" that "a favorable judicial decision" would alter the schools' "independent choices" on that score. *Id.*

A similar analysis here yields a similar conclusion. The direct causes of West's alleged injuries—e.g., recreational users who smoke marijuana in public and state officials who restrict his access to medical marijuana—are not governed by the Cole Memorandum but by state laws he does not challenge. The memorandum governs only federal prosecutors and even as to them, only loosely: it is mere guidance channeling their prosecutorial discretion, advising them to rely on state authorities to address marijuana activity unless the state's regulatory system is insufficiently robust or the particular activity implicates a federal enforcement priority. If the memorandum no longer existed, would federal prosecutors expend their limited resources cracking down on the use of recreational marijuana in Washington? West's allegations offer no basis to conclude that they would.[10] Would an uptick in federal prosecutions dissuade scofflaws from publicly smoking marijuana in the park West frequents? Given that those offending marijuana users have already chosen to defy state law, *see* 2013 Wash. Sess. Laws at 44, any such allegation would be implausible. Similarly, if federal prosecutors began

---

[10] Even before the Cole Memorandum, prosecutors were advised not to "focus federal resources in [their] States on individuals whose actions are in clear and unambiguous compliance with existing state laws providing for the medical use of marijuana." *United States v. Canori*, 737 F.3d 181, 183 (2d Cir. 2013) (quoting 2009 guidance) (alteration in original) (internal quotation marks omitted); *see supra* note 4 and accompanying text.

pursuing more CSA charges in Washington, would that encourage state legislators to *loosen* their recent restrictions on medical marijuana? Common sense hardly dictates such a result and, in any event, West fails to explain why it is likely to occur.

When conjecture is necessary, redressability is lacking. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 43-44 (1976). To find redressability on West's commandeering claim, we would have to pile conjecture on conjecture, much of it about the charging decisions of federal prosecutors. Courts do not lightly speculate how "independent actors not before [them]" might "exercise [their] broad and legitimate discretion," *Lujan*, 504 U.S. at 562 (internal quotation omitted), especially when the independent actors are federal prosecutors, *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (because prosecutors are "delegates" who help President "discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed,'" charging decisions "'generally rest[] entirely in [their] discretion'" (quoting U.S. CONST. art. II, § 3, and *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978))); *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("decision not to prosecute" ordinarily not subject to judicial review). Neither West nor amicus gives us any good reason to depart from these settled principles here. And we decline to do so especially because, even if we were to set aside the Cole Memorandum, we would not and could not compel the Department to alter the enforcement priorities that the memorandum merely documented.

## B. NEPA

Analysis of West's standing to assert a NEPA claim differs from that of his standing to assert a constitutional violation. But the result is the same.

A NEPA plaintiff can assert a violation of the statute "without meeting all the normal standards for redressability and immediacy." *City of Dania Beach v. FAA*, 485 F.3d 1181, 1186 (D.C. Cir. 2007) (quoting *Lujan*, 504 U.S. at 572 n.7) (internal quotation marks omitted). For example, the plaintiff need not allege that, if he were to succeed in enforcing a NEPA-required procedure the defendant agency did not follow, the agency's substantive policy would change. *Id.* Here, then, West need not aver that, if the Department or other defendants were ordered to prepare an environmental impact statement about the likely effects of the Cole Memorandum, the memorandum would instead be withdrawn.

A NEPA plaintiff is not absolved, however, from pleading and proving "a causal connection between the [substantive] agency action and the alleged injury." *City of Dania Beach*, 485 F.3d at 1186; *see Fla. Audubon Soc'y*, 94 F.3d at 664-65 (NEPA claimant or other procedural-rights plaintiff must "show[] a causal connection between the government action that supposedly required the disregarded procedure" and "the essential injury to the plaintiff's own interest"). West does not meet the causation requirement.

West claims that, before publication of the Cole Memorandum, NEPA required the defendants to determine what effect the memorandum's "sanction[ing]" of I-502 would have on Washington's environment. Compl. 14, 17-18. But he cannot connect the memorandum to his alleged injuries from recreational marijuana, chief among them the "degrad[ation]" of the park he visits. *Id.* at 14. As the state defendants' counsel noted at oral argument, I-502 "is itself a statute" and "was the law for about a year before the Cole Memo was issued." Oral Arg. Recording 25:18-25:50. Also, Washington had begun the process of implementing I-502 well before the memorandum existed. Given that sequence, and

18

because I-502 governs recreational users directly, we think I-502 a much more likely source of West's alleged injuries. We can only speculate that the Cole Memorandum—issued to third-party prosecutors who retain discretion to prosecute marijuana activity "on a case-by-case basis," Decl. 74—had anything to do with the alleged injuries. And just as speculation cannot establish redressability, it cannot establish causation. *Clapper*, 133 S. Ct. at 1147-50; *Simon*, 426 U.S. at 40-46; *Arpaio*, 797 F.3d at 19-25.

\* \* \* \* \*

For the foregoing reasons, we affirm the district court's dismissal of the complaint.

*So ordered.*