NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1227-22

MARY A. BOTTEON, KEREN
EBEL AVERY (MD), PETER
AVERY, ROSA ROLAND, FELIPE
ROLAND, JUAN FUENTES,
RAISA BORODAY, IRINA A.
LOPEZ, SUMBAL LATIF,
MARGARETHA WEXLER,
NATHALIE CHICA, and DAE
HAN, JOINTLY,

        Plaintiffs-Appellants,

v.

BOROUGH OF HIGHLAND
PARK, GAYLE BRILL MITTLER,
TARA CANAVERA, ELSIE
FOSTER, PHILIP GEORGE,
MATTHEW HALE, MATTHEW
HERSH, and STEPHANY KIM
CHOHAN (IN THEIR
INDIVIDUAL AND OFFICIAL
CAPACITIES), JOINTLY,

        Defendants-Respondents.

_____

Argued March 18, 2024 – Decided May 1, 2024

Before Judges Sabatino, Chase, and Vinci.

On appeal from the Superior Court of New Jersey, Law
Division, Middlesex County, Docket No. L-2068-22.

David G. Evans argued the cause for appellants.

Paul M. Bishop argued the cause for respondents (Mason, Griffin & Pierson, PC, attorneys; Paul M. Bishop, of counsel and on the brief).

Nathaniel I. Levy, Deputy Attorney General, argued the cause for amicus curiae State of New Jersey (Matthew J. Platkin, Attorney General, attorney; Michael L. Zuckerman, Deputy Solicitor General, and Melissa H. Raksa, Assistant Attorney General, of counsel; Nathaniel I. Levy, Jacqueline R. D'Alessandro, Mark D. McNally, and Tim Sheehan, Deputy Attorneys General, on the briefs).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

This appeal concerns two ordinances of the Borough of Highland Park that amended its municipal code to allow cannabis retailers, consumption lounges, and delivery services to operate in the Borough, subject to operating, licensing, and tax regulations. Although the ordinances were enacted under express authority delegated by the Legislature through New Jersey's recreational marijuana statute,[1] several concerned residents of the Borough challenged the ordinances in the Law Division as preempted by the federal Controlled

---

[1] The Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act ("CREAMMA"), N.J.S.A. 24:6I-31 to -56, became effective February 22, 2021.

Substances Act ("CSA"), 21 U.S.C. § 801. They also claimed the ordinances are inconsistent with the New Jersey Municipal Land Use Law ("MLUL"), N.J.S.A. 40:55D-1 to -163, and other state and federal laws. The trial court dismissed the complaint as procedurally untimely and also substantively deficient for failure to state a claim.

For the reasons that follow in the published portion of this opinion, we reverse the trial court's dismissal of the complaint as untimely under Rule 4:69-6(a), but we affirm the trial court's dismissal of plaintiffs' preemption claims. As to the former, the issues presented concern sufficient matters of public interest to qualify under Rule 4:69-6(c) for an enlargement of the filing period. As to the latter, our de novo review concludes that, as other state courts have found, the text of the CSA and federal marijuana enforcement policies do not require a finding of conflict preemption of CREAMMA or the Borough's ordinances.

In the unpublished portion of this opinion, we remand plaintiffs' remaining state-law claims, which were dismissed without an opportunity for discovery and without a possible evidentiary hearing, if one proves necessary to resolve expert opinion and credibility issues.

We also make clear the present facial challenge to the ordinances does not

3

foreclose any separate future "as-applied" challenges that might address their application and implementation.

I.

We begin with an overview of CREAMMA's pertinent features.

The Passage of CREAMMA

In State v. Gomes, 253 N.J. 6, 23-25 (2023), the Supreme Court described the history of CREAMMA as follows:

> In the November 2020 general election, the voters adopted an amendment to the New Jersey Constitution legalizing the possession, consumption, and commercialization of cannabis and products containing it by persons twenty-one years of age or older, but 'subject to regulation by the Cannabis Regulatory Commission.' Made effective January 1, 2021, the amendment, Article IV, Section 7, Paragraph 13 of the New Jersey Constitution states as follows:
>
> The growth, cultivation, processing, manufacturing, preparing, packaging, transferring, and retail purchasing and consumption of cannabis, or products created from or which include cannabis, by persons 21 years of age or older, and not by persons under 21 years of age, shall be lawful and subject to regulation by the Cannabis Regulatory Commission created by L. 2019, c. 153 ([N.J.S.A.] 24:6I-5.1 et al.), or any successor to that commission.
>
> . . . .
>
> 'On February 22, 2021, the Legislature enacted three bills to establish a broad regime of civil and criminal

4

provisions to regulate the newly legalized activity and achieve the constitutional amendment's public policy goals.' DCPP v. D.H., 469 N.J. Super. 107, 128 (App. Div. 2021), certif. denied, 250 N.J. 347 (2022) and 250 N.J. 395 (2022). The three enacted bills included Chapter 16 (enacting A. 21 (2020)), known as CREAMMA, codified in relevant part at N.J.S.A. 2C:35-5 to -10 and N.J.S.A. 24:6I-24. The other two adopted bills are Chapter 19, an act 'concerning certain criminal and civil justice reforms,' L. 2021, c. 19 (enacting A. 1897 (2020)), and Chapter 25, an act 'addressing certain regulated substances, with a particular emphasis on possession or consumption of various forms of cannabis,' L. 2021, c. 25 (enacting A. 5342 (2021)).

In its findings and declarations section, CREAMMA articulates a legislative intent 'to adopt a new approach to our marijuana policies . . . in a similar fashion to the regulation of alcohol for adults.' N.J.S.A. 24:6I-32(a). The statute broadly includes fourteen other findings and declarations. Among them, finding (e) highlights that 'Black New Jerseyans are nearly three times more likely to be arrested for marijuana possession than white New Jerseyans, despite similar usage rates.' Id. at -32(e). Finding (f) acknowledges that New Jersey spends millions per year in marijuana possession enforcement costs. Id. at -32(f). In addition, finding (n) recognizes that '[a] marijuana arrest in New Jersey can have a debilitating impact on a person's future, including consequences for one's job prospects, housing access, financial health, familial integrity, immigration status, and educational opportunities.' Id. at -32(n). Also, finding (o) declares that 'New Jersey cannot afford to sacrifice public safety and individuals' civil rights by continuing its ineffective and wasteful past marijuana enforcement policies.' Id. at -32(o).

5

[(Emphases added).]

Relevant here, Section 31(a) of CREAMMA states "[a] municipality may enact ordinances or regulations, not in conflict with [CREAMMA]: (1) governing the number of cannabis establishments, distributors, or delivery services, as well as the location, manner, and times of operation . . . and (2) establishing civil penalties for violation of an ordinance or regulation governing [such activity]." N.J.S.A. 24:6I-45(a). CREAMMA also allows municipalities to impose a 2% tax on cannabis sales. N.J.S.A. 40:48I-1(a)(1).

## The Highland Park Ordinances

On August 17, 2021, the Borough adopted Ordinance 21-2027, which amended its municipal code to permit cannabis retailers (and some on-site consumption lounges) and delivery services to operate in the Borough, subject to operating, licensing, and tax regulations.

## The Planning Board's First Public Hearing

Before the first ordinance was passed, a public hearing was held on July 8, 2021, pursuant to N.J.S.A. 40:55D-26, wherein the Borough Planning Board reviewed the draft ordinance for consistency with the Borough's master plan. At the hearing, the Planning Board's attorney advised the Planning Board and members of the public of the ordinance's provisions. The attorney advised that,

6

as of CREAMMA's effective date, all marijuana businesses would be permitted to operate unless municipalities enacted opt-out or restrictive ordinances. Thus, the Planning Board considered whether an ordinance should be enacted, as authorized by CREAMMA as a local option, to permit the Borough to limit and regulate the marijuana businesses in its borders, or to prohibit them entirely.

Some members of the public, who apparently[2] spoke before the Planning Board, expressed concern that the ordinance was not in furtherance of the Borough's master plan and contravened federal cannabis law. Having heard these concerns, on June 10, 2021, the Planning Board "found that the Ordinance . . . is in the best interests of the residents . . . consistent with the Master Plan provisions to improve business activities within the Borough of Highland Park."

The Second Ordinance and the Planning Board's Second Public Hearing

Seven months later, on March 15, 2022, the Borough adopted Ordinance 22-2044 "to clarify the regulations governing medical cannabis dispensaries, . . . cannabis retailers, and . . . cannabis delivery services, and to further refine the licensing process and the criteria for evaluation of potential cannabis owners

---

[2] We have not been furnished with transcripts of the Planning Board hearings, but those hearings are described within "Resolutions of Memorialization" prepared by the Planning Board for each ordinance, which are included in the appellate record.

within the Borough."

The Planning Board again had convened before the proposed second ordinance was passed to review its consistency with the Borough's master plan. On March 10, 2022, a public hearing was held before the Planning Board where a representative of the Borough Council explained the ordinance's purpose in further regulating marijuana businesses.

Several members of the public reiterated their objections to the ordinance's consistency with the master plan. The objectors also asked the Planning Board to take into account "what was perceived to be adverse impacts on the community, the character of the community and the potential for harm to children in the community of Highland Park."

The Planning Board found this second ordinance "not inconsistent with the Master Plan . . . in that it advances the business purposes recommended in the Master Plan and revitalization of Raritan Avenue." Thereafter, the governing body adopted it.

Procedural History of this Litigation

On May 24, 2022, the twelve named plaintiffs filed an amended complaint

8

in the Law Division alleging defendants[3] enacted the ordinances in violation of various state and federal laws, specifically (1) N.J.S.A. 40:48-2; (2) the New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c) and the federal Civil Rights Act, 42 U.S.C. § 1983; (3) the Supremacy Clause of the U.S. Constitution; (4) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; (5) RICO criminal conspiracy, 18 U.S.C. § 1962(d); (6) RICO civil conspiracy, 18 U.S.C. § 1962(c); and (7) the MLUL. Defendants moved to dismiss the complaint, asserting it was untimely and otherwise procedurally deficient, and also failed to state any claims upon which relief can be granted under Rule 4:6-2(e).

After hearing oral argument on defendants' motion, the trial court dismissed the complaint with prejudice, for reasons it placed on the record in an oral decision on November 18, 2022.[4] This appeal by plaintiffs ensued.

Among the points asserted in their appellate brief, plaintiffs argue that not only are the Borough's ordinances preempted by federal law, but CREAMMA

---

[3] The named defendants are the Borough, along with various municipal officials.

[4] In its decision, the trial court noted that plaintiffs had agreed to voluntarily dismiss counts four (alleging RICO violations), five (RICO criminal conspiracy), and six (RICO civil conspiracy).

itself is federally preempted and invalid. When it became apparent to this court that plaintiffs had failed to serve the Attorney General with notice of their challenge to the validity of the state statute in compliance with Rules 2:5-1(b)(3) and 4:28-4(a)(1); we notified the Attorney General of the pendency of the appeal and invited his office's participation as amicus curiae. The Attorney General accepted the invitation,[5] limiting his office's arguments to plaintiffs' preemption challenge to CREAMMA. We then received briefs and supplemental briefs from the amicus Attorney General and the parties concerning that discrete issue. The Attorney General participated in the appellate oral argument.

## II.

We first address the trial court's ruling that plaintiffs' complaint challenging the Borough's actions is time-barred under Rule 4:69-6(a), the Rule governing actions in lieu of prerogative writs, because it was filed more than forty-five days after the adoption of the first ordinance. This time bar issue is

---

[5] Of procedural note, the Attorney General's acceptance disclosed that Mary A. Botteon, the lead plaintiff, and others represented by the same counsel representing plaintiffs in the present case had challenged CREAMMA's constitutionality in an earlier Law Division action against the State in Mercer County (Docket No. MER-L-2293-20). The Attorney General defended that matter, which was dismissed by the trial court with prejudice on July 26, 2021. Plaintiffs in that case did not appeal. No one is arguing to us that the previous dismissal has res judicata or collateral estoppel effects on this case.

easily dispensed with.  For one thing, the complaint was filed on April 29, 2022, within forty-five days of the adoption of the second ordinance on March 15, 2022.  The two ordinances are inextricably intertwined, and it would make no sense for the court to adjudicate the validity of one without the other.

More importantly, this lawsuit manifestly concerns matters of public importance that justify an enlargement of the forty-five-day period in the public interest under subsection (c) of Rule 4:69-6.  See, e.g., Hopewell Valley Citizens' Grp., Inc. v. Berwind Prop. Grp. Dev. Co., L.P., 204 N.J. 569, 578 (2011); Harrison Redevelopment Agency v. DeRose, 398 N.J. Super. 361, 418 (App. Div. 2008).  The continued viability of the ordinances plainly affects residents of the Borough (who, among other things, would receive the positive fiscal benefit of the 2% in tax receipts generated from the marijuana sales, but who also could be affected by what plaintiffs allege are the negative effects of dispensary activities).  In addition, businesses that may wish to be licensed as vendors and customers of the dispensaries are also impacted.  We also perceive no unreasonable delay in plaintiffs filing suit in April 2022.[6]

---

[6] Given our application of the enlargement provision, we need not address plaintiffs' argument that the complaint is merely a declaratory judgment action that does not have the characteristics of an action in lieu of prerogative writs.

We accordingly reverse the trial court's ruling that the complaint is time-barred with respect to the first ordinance.

## III.

We now turn to the federal preemption issue that is at the heart of this appeal.[7] The well-established elements of federal preemption were aptly described in detail by our Supreme Court in Hager v. M&K Construction, 246 N.J. 1, 26-45 (2021), and then reiterated last year by the Court in Matter of Altice USA, Inc., 253 N.J. 406, 415 (2023). We summarize them briefly here.

Under the Supremacy Clause of the United States Constitution, federal law preempts state law in several circumstances. Id. at 417 (citing English v.

---

[7] As a threshold matter, the amicus briefs of the Attorney General contend the plaintiffs in this case lack standing as individual citizens to assert a federal preemption claim under the CSA because the CSA does not contain a private right of action. Several courts in other jurisdictions have agreed, holding the CSA creates no private cause of action to enforce its terms. See, e.g., Safe Streets Alliance v. Hickenlooper, 859 F.3d 865, 898-904 (10th Cir. 2017); West v. Lynch, 845 F.3d 1228, 1235-37 (D.C. Cir. 2017). This lack-of-standing argument was not raised below in the trial court by defendants, nor was it ruled upon by the motion judge. As a general principle, we are disinclined to address arguments by amici that were not litigated by the parties. Bethlehem Twp. Bd. of Educ. v. Bethlehem Twp. Educ. Ass'n, 91 N.J. 38, 48-49 (1982). The Attorney General urges us to nevertheless reach the lack-of-standing argument because, as we noted above, plaintiffs failed to serve notice upon the Attorney General in the trial court of their preemption claim attacking the validity of CREAMMA. Because our forthcoming analysis will show that plaintiffs' preemption argument lacks merit, we shall assume for sake of discussion, without deciding, that plaintiffs have standing to assert the argument.

Gen. Elec. Co., 496 U.S. 72, 78 (1990)). They are categorically divided between "express preemption" and "implied preemption." Hager, 246 N.J. at 28. Express preemption "is found when Congress explicitly preempts state law." Altice, 253 N.J. at 417. If the text of a preemption clause has more than one plausible reading, however, "courts ordinarily 'accept the reading that disfavors pre-emption.'" Altria Grp., Inc. v. Good, 555 U.S. 70, 77 (2008) (quoting Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449 (2005)).

"In the alternative, there are two forms of implied preemption: field and conflict." Hager, 246 N.J. at 28. "'Field preemption applies "where the scheme of federal regulation is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'"'" Ibid. (quoting In re Reglan Litig., 226 N.J. 315, 328 (2016) (quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992))).

Conflict preemption, in turn, exists when either (1) "'compliance with both federal and state regulations is a physical impossibility'" or (2) state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Altice, 253 N.J. at 417 (quoting Reglan, 226 N.J. at 329 (internal citation omitted) (quoting Gade, 505 U.S. at 98)).

13

In <u>Hager</u>, our Supreme Court held that express and field preemption were not applicable to CREAMMA "because the CSA explicitly leaves room for state law to operate[.]" 246 N.J. at 29. The Court supported that determination by quoting the following language from the CSA:

> No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.
>
> [<u>Ibid.</u> (quoting 21 U.S.C. § 903).]

The Court in <u>Hager</u> accordingly focused on conflict preemption. <u>Ibid.</u> In that regard, the Court underscored that conflict preemption "requires an actual—rather than hypothetical or speculative—conflict between federal and state law." <u>Ibid.</u> "'[P]re-emption is not to be lightly presumed.'" <u>Ibid.</u> (quoting <u>Franklin Tower One, LLC v. N.M.</u>, 157 N.J. 602, 615 (1999)). The case for preemption is "'particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to . . . tolerate whatever tension there [is] between them.'" <u>Id.</u> at 30 (quoting

14

Wyeth v. Levine, 555 U.S. 575 (2009) (alteration in original) (quoting Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 166-67 (1989))).

The Court in Hager then presented an extensive analysis of whether the CSA impliedly preempts CREAMMA through conflict preemption. It specifically analyzed the two varieties of conflict preemption: i.e., impossibility ("where it is 'impossible for a private party to comply with both state and federal requirements'"), or obstacle ("when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"). Id. at 29 (quoting PLIVA, Inc. v. Mensing, 564 U.S. 604, 618 (2011) (quoting Freightliner Corp. v. Myrick, 514 U.S. 280, 287 (1995))). The Court concluded that neither of those forms of conflict preemption applied to CREAMMA. Id. at 38-42.

We incorporate by reference the Court's thorough discussion of the preemption analysis in Hager tracing the history, purposes, and enforcement status of the CSA, and its detailed "deciphering [of] congressional intent." Id. at 30-42. We need not repeat that analysis here, except to highlight a few central points.

As Hager noted, marijuana was classified as a "Schedule I" substance at the time of the CSA's enactment in 1970, including it with substances with "a

high potential for abuse." Id. at 31.  However, "guidance from senior personnel in the Department of Justice ("DOJ") to the offices of the United States Attorneys issued over the past decade or so has, at times, deprioritized—but not prohibited—federal prosecution of marijuana activities that are legal under state law."  Id. at 32.  Hager cited a series of memoranda from the DOJ reflecting that enforcement approach, which has vacillated over administrations.  Id. at 32-33.  As characterized by Hager, the Executive Branch "has muddied the waters between state marijuana laws and federal enforcement."  Id. at 33.  Congress, meanwhile, has periodically included language in annual appropriations riders that has prohibited the DOJ from using allocated funds to prosecute conduct that is legal under the medical marijuana laws of certain states, including New Jersey.  Id. at 33-34.

Plaintiffs argue the Court's partial reliance in Hager on Congressional appropriations riders is misplaced because (1) the riders have pertained to medical marijuana, not, as here, recreational marijuana; and (2) no such riders exist within the annual federal appropriations enactments at the present time. The Attorney General does not quibble with those distinctions, but argues there remain sufficient grounds to hold CREAMMA is not preempted.  The Attorney General maintains that neither of the two forms of conflict preemption—either

16

impossibility or obstacle—apply to this case. The Borough joins in that position.

We agree with the Attorney General and the Borough that it is not "impossible" for the CSA and CREAMMA to be in effect simultaneously, and that CREAMMA does not pose an impermissible "obstacle" to enforcement of the CSA if federal officials chose to prosecute New Jerseyans more aggressively for violations of federal marijuana laws.

The CSA expressly preserves the ability of state law to operate, "unless there is a positive conflict between [the CSA] and that [s]tate law so that the two cannot consistently stand together." Hager, 246 N.J. at 29 (21 U.S.C. § 903). CREAMMA, meanwhile, contains what Hager characterized as "express deferential references to federal law," which "recognize that state law may not permit what federal law forbids." Id. at 28 (citing sections 47 and 48 of CREAMMA). CREAMMA exclusively regulates liability under state law for marijuana use, in furtherance of the state constitutional amendment passed by the voters in November 2020. See N.J. Const. art. IV, § 7, ¶ 13. CREAMMA provides no defense to federal prosecution of conduct that may be charged as violative of federal law.

It is not impossible for New Jerseyans to comply with the CSA after the enactment of CREAMMA. CREAMMA does not require any person to possess, purchase, or use marijuana. The statute does not require any business to sell marijuana, or any municipality to adopt, as here, an ordinance to allow marijuana dispensaries within its borders. The residents and marijuana businesses of this state act at the risk that their activities might be prosecuted by federal authorities. Thus far, federal authorities have not changed their CSA enforcement policies, even though, as the Court recognized in Hager, they might alter course at any time. Hager, 246 N.J. at 42 (noting the "temporal nature" of federal marijuana policies).

For similar reasons, we also do not regard CREAMMA as an "obstacle" to federal enforcement of the CSA. Federal authorities are not bound by state law. We are cognizant that, as Hager mentioned, CREAMMA disallows state law enforcement from cooperating with federal authorities in enforcing the CSA. Id. at 27. But such a provision may be acceptable under "anti-commandeering" principles, an issue that is not squarely before us here. See Printz v. U.S., 521 U.S. 898, 935 (1997) (explaining such principles prevent the federal government from requiring state legislatures to enact laws to further federal policies or state officials to enforce federal laws). Moreover, as Hager notes, an obstacle

18

analysis requires a court to consider "the relationship between state and federal laws as they are interpreted and applied, not merely as they are written." 246 N.J. at 30 (quoting R.F. v. Abbott Labs., 162 N.J. 596, 618 (2000) (quoting Jones v. Rath Packing Co., 430 U.S. 519, 526 (2000))) (emphasis added). At present, no actual impediments to federal enforcement have been evidenced in this case, one in which the State's own highest law enforcement officer is participating and whose office would presumably have an awareness of such clashes. It is no secret that New Jerseyans voted to adopt the 2020 constitutional amendment and that CREAMMA was enacted in 2021 to effectuate those citizen-approved policies, despite continued federal prosecution of persons in this state who violate the federal drug laws. The federal and state laws can and continue to coexist.

Other courts have reached similar conclusions about the coexistence of the CSA with state laws allowing and regulating the usage of medical or recreational marijuana. For example, in In re State Question No. 807, Initiative Petition No. 423, 468 P.3d 383, 391 (Okla. 2020), the Oklahoma Supreme Court held that Oklahoma's proposed state constitutional amendment allowing, regulating, and taxing the use of recreational marijuana would not be preempted by the CSA. Similarly, the Supreme Court of New Hampshire has ruled that its

19

state laws concerning reimbursement of the costs of therapeutic marijuana did not conflict with the CSA, under either impossibility or obstacle preemption. Appeal of Panaggio, 260 A.3d 825, 832-37 (N.H. 2021).

Most recently, as another example, a New York state court rejected a conflict preemption challenge to its state's cannabis statute regulating marijuana dispensaries and on-site consumption businesses. Buenos Hill Inc. v. Saratoga Springs, 206 N.Y.S.3d 902 (N.Y. App. Div. 2024). As the New York court observed, "Congress' decision to not interfere with state recreational and medical marijuana laws, coupled with its awareness of the issues, is powerful evidence that Congress did not intend for the CSA[8] to be the exclusive means of addressing the problems associated with drug abuse and safety." Id. at __. We are mindful that some other state court opinions have adopted contrary approaches, but we find them less persuasive than the above cases we have cited and other cases cited to us that have found no preemption.[9]

---

[8] For completeness, we note that plaintiffs' other assorted preemption arguments claiming the violation of other federal provisions apart from the CSA, such as Food and Drug Administration regulations—even assuming they have standing to bring them—have not been substantiated.

[9] The court in Buenos Hill cites a plethora of opinions from across the nation addressing the conflict preemption subject, as of March 2024. Id. at __, n. 5. We are unpersuaded in particular by the Minnesota Supreme Court majority

For these many reasons, CREAMMA is not federally preempted by the CSA. Because the Borough's ordinances are authorized by CREAMMA, they likewise are not preempted.

> [At the direction of the court, the published version of this opinion omits Part IV, addressing the trial court's dismissal of plaintiffs' state-law claims. R. 1:36-3.]

IV.

We now turn in this unpublished portion of our opinion to the trial court's dismissal on the pleadings of all of plaintiffs' state-law claims under Rule 4:6-2(e). Those claims include contentions that the ordinances are not valid exercises of the municipality's police powers under N.J.S.A. 40:48-2. That statute provides:

> Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect

opinion in Musta v. Mendota Heights Dental Center, 965 N.W.2d 312 (Minn. 2021), a decision stressed here by plaintiffs, which held that the CSA preempted that state's workers' compensation laws mandating reimbursement of employee medical cannabis purchases. Unlike the state laws challenged in Musta, CREAMMA, as we noted above, does not compel a party to engage in affirmative conduct.

A-1227-22

the powers and duties conferred and imposed by this subtitle, or by any law.

Plaintiffs contend the ordinances exceed the Borough's legitimate police powers and must be nullified.

Relatedly, plaintiffs' state-law claims also include contentions that the marijuana ordinances are an invalid exercise of the Borough's zoning authority under the MLUL, insofar as they allegedly are arbitrary, capricious, and unreasonable. "The Legislature has the constitutional authority to delegate to municipalities the 'police power' to enact ordinances governing 'the nature and extent of the uses of land,' N.J. Const. art. IV, § 6, ¶ 2, and the Legislature has done so through the passage of the [MLUL]." 388 Route 22 Readington Realty Holdings, LLC v. Twp. of Readington, 221 N.J. 318, 339 (2015). Even so, courts may find that municipalities have misapplied their zoning discretion by enacting ordinances that are "clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the [zoning] statute." Bow & Arrow Manor, Inc. v. Town of W. Orange, 63 N.J. 335, 343 (1973).

As support for these arguments, plaintiffs contend, among other things, that the marijuana dispensaries will produce undesirable impacts on the quality of life within the Borough, such as traffic congestion, odors, impaired driving by customers, possible increases in crime, and the reduction of property values

22

in neighborhoods near the dispensaries. Plaintiffs represent that, if the lawsuit is permitted to proceed, they will tender a report from an expert witness who will substantiate such detrimental impacts and demonstrate why the ordinances are arbitrary, capricious, and unreasonable.

The Borough, in response, contends that plaintiffs' fears are exaggerated and speculative. It contends that, given the wide policy-making discretion afforded to local government in its exercise of police and zoning powers, there is no realistic chance that plaintiffs could prove any of their state-law claims and persuade the court that the ordinances should be nullified or modified in any way. The Borough also emphasizes the presumption of validity afforded to duly adopted ordinances. Id. at 350.

We review the trial court's dismissal of plaintiffs' complaint de novo. W.S. v. Hildreth, 252 N.J. 506, 518 (2023). In doing so, we must bear in mind the well-settled indulgent approach that our courts must use in evaluating whether complaints may survive dismissal motions under Rule 4:6-2(e).

As the Supreme Court has instructed, a reviewing court assessing the dismissal of a complaint under Rule 4:6-2(e) must "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being

given to amend if necessary." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). The review of the pleading must be performed in a manner that is "generous and hospitable." Ibid. The court's role is simply to determine whether a cause of action is "suggested" by the complaint. Ibid. (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)). See also Am. C.L. Union of N.J. v. Cnty. Prosecutors Ass'n of N.J., __ N.J. __ (2024).

Applying the prescribed standards here, we are constrained to vacate the trial court's dismissal. Although defendants have asserted, in essence, that plaintiffs have been alarmists and that their predictions of adverse impact from the dispensaries are overblown, the Printing Mart standard justifies allowing plaintiffs a fuller and fairer opportunity to make their case.

Accordingly, the trial court shall allow the parties to pursue reasonable discovery, including factual and documentary inquiries (subject to any pertinent privileges), the submission of expert report(s), and, if appropriate, depositions. Following that discovery, defendants may renew dispositive motion practice under Rule 4:46. If genuine issues of material fact are manifest, it may be appropriate for the trial court to conduct an evidentiary hearing to resolve those

factual disputes and evaluate the credibility of expert or fact witnesses.  See,
e.g., Dome Realty, Inc. v. City of Paterson, 83 N.J. 212, 243-45 (1980)
(upholding, in the circumstances presented, the use of a two-day plenary hearing
to evaluate the contested reasonableness and validity of a municipal ordinance).

We entrust the trial court will exercise its wise discretion over such
discovery and other proceedings, so as to channel the litigation with a focus on
the key substantive issues.

We also stress that the present lawsuit is a facial challenge to the validity
of the ordinances and is not an as-applied challenge to the actual implementation
of their provisions.  For example, if the alleged nuisances are actually generated
by the activities of particular dispensaries or customers, those problems are best
addressed in an as-applied challenge.[10]

V.

We therefore remand the case for further proceedings consistent with this
opinion.  We do not retain jurisdiction.  The trial court shall convene a case
management conference within twenty days.

---

[10]  Because the record must be developed, it is premature to pass at this stage
upon the individual defendants' contentions of immunity.  Also, plaintiffs'
argument that the trial court's decision lacked an adequate statement of reasons
under Rule 1:7-4 is moot.

Affirmed in part, vacated in part.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1227-22